Ashton J. Hyde (A13248)
**YOUNKER HYDE MACFARLANE,
PLLC**
257 East 200 South, Suite 1080
Salt Lake City, UT 84111
Telephone: (801) 335-6467
Facsimile: (801) 335-6478
*ashton@yhmlaw.com*

Bryan L. Bleichner*
Philip J. Krzeski*
**CHESTNUT CAMBRONNE PA**
100 Washington Avenue South, Suite 1700
Minneapolis, MN 55401
Telephone: (612) 339-7300
Facsimile: (612) 336-2940
*bbleichner@chestnutcambronne.com*
*pkrzeski@chestnutcambronne.com*

*Admitted *Pro Hac Vice*

*Attorneys for Plaintiffs and the Putative Class*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| JASON RASMUSSEN, *et al.*,<br><br>*on behalf of themselves and all others similarly situated*,<br><br>      Plaintiffs,<br><br>v.<br><br>UINTAH BASIN HEALTHCARE,<br><br>      Defendant. | **PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT UNDER FEDERAL RULES OF CIVIL PROCEDURE 12(b)(1) AND 12(b)(6), OR IN THE ALTERNATIVE, SUMMARY JUDGEMENT UNDER RULE 56**<br><br>Case No. 2:23-cv-00322-HCN-DBP<br><br>Chief District Judge Howard C. Nielson Jr.<br>Chief Magistrate Judge Dustin B. Pead |

## **TABLE OF CONTENTS**

INTRODUCTION ................................................................................................. 1

FACTUAL BACKGROUND .............................................................................. 1

LEGAL STANDARD .......................................................................................... 4

ARGUMENT ......................................................................................................... 6

   I.     PLAINTIFFS ESTABLISH ARTICLE III STANDING ............................... 6

     A.   Plaintiffs Sufficiently Allege an Injury-In-Fact. ........................................ 6

        1.   Evidence of Mitigation Costs Supports a Finding of Standing. ................. 7

        2.   Plaintiffs Suffering from Unauthorized Charges Provides Standing. ....... 11

        3.   Plaintiffs' Emotional Distress in the Forms of Fear, Anxiety, Annoyance,

            Inconvenience & Nuisance are Evidence of Standing. .............................. 12

        4.   Allegations of Loss of Privacy & Diminution in Value of Private Information

            Support a Finding of Standing. ................................................................. 13

        5.   Due to Loss of Benefit of the Bargain Plaintiffs Have Standing. ............. 14

        6.   An Increase in Spam is Evidence of Standing. ......................................... 15

        7.   Because Plaintiffs will Suffer Future Damages, they have Standing. ...... 16

     B.   Plaintiffs' Injuries Are Fairly Traceable to UBH's Conduct. ..................... 18

     C.   Plaintiffs' Injuries Are Redressable. ......................................................... 19

  II.    UBH HAS FAILED TO CARRY ITS BURDEN TO SHOW THAT AN EXCEPTION

       TO CAFA APPLIES. ................................................................................... 20

III.   UBH'S MOTION FOR SUMMARY JUDGMENT SHOULD BE DENIED. ................ 26

    A.   CADA does not "effectively exculpate" UBH from all liability. ................................ 26

    B.   CADA does not define "reasonable compliance." ........................................................ 27

    C.   UBH's motion for summary judgment is premature. .................................................. 28

IV.   PLAINTIFFS' COMPLAINT STATES A CLAIM UPON WHICH RELIEF CAN BE

    GRANTED IN ITS SECOND, FOURTH, FIFTH & SEVENTH CLAIMS .................... 30

    A.   Plaintiff Has Plausibly Pleaded a Claim for Negligence *Per Se*. .................................. 30

    B.   Plaintiffs State a Viable Claim for Unjust Enrichment .................................................. 32

    C.   Plaintiffs Plead a Claim for Breach of Confidence. ...................................................... 34

    D.   Plaintiffs Plead a Claim for Invasion of Privacy. ......................................................... 35

CONCLUSION ..................................................................................................................... 36

**<u>TABLE OF AUTHORITIES</u>**

*Ackley v. Bartlesville Exam'r-Enter.,*
No. 06-CV-529-TCK-PJC, 2007 WL 9782753 (N.D. Okla. May 9, 2007) ........................... 29

*Anirudh v. CitiMortgage, Inc.,*
598 F. Supp. 2d 448 (S.D.N.Y. 2009) ....................................................................................... 22

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) ................................................................................................................... 5

*Benham v. Ozark Materials River Rock, LLC,*
885 F.3d 1267 (10th Cir. 2018) .............................................................................................. 18

*BM Glob. Grp. USA, LLC v. BSN Med., Inc.,*
No. 2:05-cv-821, 2006 WL 3337421, (D. Utah Nov. 16, 2006) .............................................. 29

*Bohnak v. Marsh & McLennan Cos., Inc.,*
79 F.4th 276 (2d Cir. 2023) .............................................................................................. 9, 17

*Bowen v. Paxton Media Grp., LLC,*
No. 5:21- CV-00143, 2022 WL 4110319 (W.D. Ky. Sept. 8, 2022) ................................. 12, 34

*Canfield v. Albertson's, Inc.,*
841 P.2d 1224 (Utah App.1992) .............................................................................................. 28

*Charlie v. Rehoboth McKinley Christian Health Care Servs.,*
598 F. Supp. 3d 1145 (D.N.M. 2022) ...................................................................................... 33

*Child v. Gonda,*
972 P.2d 425 (Utah 1998) ........................................................................................................ 32

*Clapper v. Amnesty International USA*
568 U.S. 398 (2013) ................................................................................................................. 16

*Clemens v. ExecuPharm Inc.,*
48 F.4th 146 (3d Cir. 2022) ................................................................................................. 8, 17

*Coffey v. Freeport McMoran Copper & Gold,*
581 F.3d 1240 (10th Cir. 2009) .............................................................................................. 20

*Craftwood II, Inc. v. Generac Power Systems, Inc.,*
920 F.3d 479 (7th Cir. 2019) ................................................................................................... 16

*Dannunzio v. Liberty Mut. Ins. Co.,*
CV 21-1984, 2021 WL 5177767 (E.D. Pa. Nov. 8, 2021) ....................................................... 12

*Davies v. Olson*,
746 P.2d 264 (Utah Ct. App. 1987). ..................................................... 32

*Dickson v. Direct Energy, LP*,
69 F.4th 338 (6th Cir. 2023) ................................................................ 15

*Dieffenbach v. Barnes & Noble, Inc*
887 F.3d. .......................................................................................... 9, 11

*Dutcher v. Matheson*,
16 F. Supp. 3d (D. Utah 2014) ........................................................ 23, 25

*Dutcher v. Matheson*,
840 F.3d 1183 (10th Cir. 2016) ..................................................... *passim*

*Enoch v. Dahle/Meyer Imports, LLC*,
No. 2:05-cv-409, 2006 WL 547947 (D. Utah Mar. 6, 2006)................... 29

*Equal Emp. Opportunity Comm'n v. Roark-Whitten Hosp. 2, LP*,
28 F.4th 136 (10th Cir. 2022) ............................................................... 5

*Feins v. Goldwater Bank NA*,
CV-22-00932-PHX-JJT, 2022 WL 17552440 (D. Ariz. Dec. 9, 2022).................. 13

*Fero v. Excellus Health Plan, Inc.*,
236 F. Supp. 3d 735 (W.D.N.Y. 2017) .................................................. 19

*Figueroa v. United States*,
64 F. Supp. 2d 1125 (D. Utah 1999)..................................................... 28

*First Choice Fed. Credit Union v. Wendy's Co.*,
No. 16-506, 2017 WL 9487086 (W.D. Pa. Feb. 13, 2017)..................... 31

*Flores v. AON Corp.*,
No. 1-23-0140, 2023 IL App (1st) 230140 (Sept. 29, 2023) ................... 16

*Gaddy v. Long & Foster Companies, Inc.*,
CV212396RBKEAP, 2023 WL 1926654 (D.N.J. Feb. 10, 2023). ........... 11

*Galaria v. Nationwide Mut. Ins. Co.*,
663 Fed. Appx. 384 (6th Cir. 2016)...................................................... 17

*Garey v. James S. Farrin, P.C.*,
35 F.4th 917 (4th Cir. 2022) ................................................................ 16

*Hansen v. Eyre*,
  116 P.3d 290 (Utah 2005) ........................................................... 31

*Hapka v. CareCentrix, Inc.*,
  No. 16-2372-CM, 2016 WL 7336407 (D. Kan. Dec. 19, 2016). ............................... 19

*Helm v. Kansas*,
  656 F.3d 1277 (10th Cir. 2011) ........................................................ 5

*Hicks v. Bd. Of Cnty. Commissioners of Cnty. Of Otero*,
  No. CV 18-850 DHU/JFR, 2022 WL 3279256 (D.N.M. Aug. 11, 2022) .............................. 29

*Holiday v. Progressive Ins. Co.*,
  No. 2:21-CV-173-DAK-DBP, 2022 WL 1307874 (D. Utah May 2, 2022) ........................... 27

*Hollinger v. Home State Cnty. Mut. Ins. Co.*,
  No. 5:09-CV-118, 2010 WL 11530632 (E.D. Tex. Aug. 5, 2010) ........................................ 22

*Holmes v. Elephant Ins. Co.*,
  No. 3:22CV487, 2023 WL 4183380 (E.D. Va. June 26, 2023) ................................. 16

*House v. Armour of America, Inc.*,
  929 P.2d 340 (Utah 1996) ........................................................... 28

*Hutchinson v. Pfeil*,
  105 F.3d 562 (10th Cir.1997) ........................................................ 5

*In re 21st Century Oncology Cust. Data Sec. Breach Litig.*,
  380 F. Supp. 3d 1243 (M.D. Fla. 2019) .............................................. 9, 17

*In re Anthem, Inc. Data Breach Litig.*,
  15-MD-02617-LHK, 2016 WL 3029783 (N.D. Cal. May 27, 2016) ...................................... 13

*In re Arby's Rest. Grp. Inc. Litig.*,
  No. 1:17-CV-0514-AT, 2018 WL 2128441 (N.D. Ga. Mar. 5, 2018) ..................................... 31

*In re Banner Health Data Breach Litig.*,
  No. CV-16-02696-PHX-SRB, 2017 WL 6763548 (D. Ariz. Dec. 20, 2017) ......................... 32

*In re Capital One Consumer Data Sec. Breach Litig.*,
  488 F. Supp. 3d 374 (E.D. Va. 2020) ................................................. 31

*In re EpiPen Mktg., Sales Practices & Antitrust Litig.*,
  336 F. Supp. 3d 1256 (D. Kan. Aug. 20, 2018) ...................................... 18

*In re Equifax, Inc., Cust. Data Sec. Breach Litig.*,
  362 F. Supp. 3d ............................................................................................ 7, 31

*In re Gallagher Data Breach Litig.*,
  631 F. Supp. 3d 573 (N.D. Ill. Sept. 28, 2022) ............................................ 9

*In re Horizon Healthcare Servs. Inc. Data Breach Litig.*,
  846 F.3d 625 (3d Cir. 2017) ........................................................................ 11

*In re Marriott Int'l, Inc.*,
  440 F. Supp. 3d 447 (D. Md. Feb. 21, 2020) ...................................... 14,31, 33

*In re Mednax Servs.*,
  603 F. Supp. 3d 1183 (S.D. Fla. May 10, 2022) ................................... *passim*

*In re Nickelodeon Consumer Privacy Litig.*,
  827 F.3d 262 (3d Cir. 2016) ........................................................................ 11

*In re Premera Blue Cross Cust. Data Sec. Breach Litig.*,
  198 F. Supp. 3d 1183 (D. Or. 2016) ............................................................ 14

*In re Sprint Nextel Corp.*,
  593 F.3d 669 (7th Cir. 2010) ....................................................................... 22

*In re Takata Airbag Prod. Liab. Litig.*,
  15-MD-02599, 2022 WL 17546365 (S.D. Fla. Nov. 10, 2022) ................... 14

*In re Target Corp. Cust. Data Sec. Breach Litig.*,
  66 F. Supp. 3d 1154 (D. Minn. 2014) ................................................... 15, 19

*In re The Home Depot, Inc., Cust. Data Sec. Breach Litig.*,
  2016 WL 2897520 (N.D. Ga. May 17, 2016) .............................................. 31

*In re USAA Data Sec. Litig.*,
  621 F. Supp. 3d 454 (S.D.N.Y. Aug. 11, 2022) ......................................... 13

*In re Wawa, Inc. Data Sec. Litig.*,
  No. CV 19-6019, 2021 WL 1910887 (E.D. Pa. May 12, 2021). .................. 34

*In re Yahoo! Inc. Cust. Data Sec. Breach Litig.*,
  16-MD-02752-LHK, 2017 WL 3727318 (N.D. Cal. Aug. 30, 2017) ........... 13

*Jackson v. Madison Sec. Grp., Inc.*,
  No. 21-CV-8721 (JGK), 2022 WL 4538290 S.D.N.Y. Sept. 28, 2022) ........ 22

*Kilgore v. Easterseals-Goodwill N. Rocky Mountain, Inc.*,
   2023 WL 4599321 ................................................................................................ 4

*Klein v. Facebook, Inc.*,
   580 F. Supp. 3d 743 (N.D. Cal. 2022) .................................................................. 33

*Lax v. APP of New Mexico ED, PLLC*,
   No. 22-2057, 2022 WL 2711230 (10th Cir. July 13, 2022)........................ 21, 24, 25

*Lewert v. P.F. Chang's China Bistro, Inc.*,
   819 F.3d 963(7th Cir. 2016) ................................................................................ 19

*Liston v. King.com, Ltd.*,
   254 F. Supp. 3d 989 (N.D. Ill. 2017) .................................................................. 33

*Magnusson v. Ocwen Loan Serv., LLC*,
   No. 2:14-cv-00161, 2014 WL 6636735 (D. Utah Nov. 24, 2014)........................... 29

*McCombs v. Delta Group Electronics., Inc*
   1:22-CV-00662-MLG-KK, 2023 WL 3934666 (D.N.M. June 9, 2023) ........... 17, 21

*McCreary v. Filters Fast LLC*,
   3:20-CV-595-FDW-DCK, 2021 WL 3044228 (W.D.N.C. July 19, 2021) ......... 9, 11

*McMorris v. Carlos Lopez & Assocs., LLC*
   995 F.3d 295 (2d Cir. 2021)........................................................................... 16, 17

*Middleton v. Stephenson*,
   749 F.3d 1197 (10th Cir. 2014) ........................................................................... 24

*Mitchell v. Wells Fargo Bank*,
   355 F. Supp. 3d 1136 (D. Utah 2018)................................................................ 4, 5

*Mondragon v. Capital One Auto Fin.*,
   736 F.3d 880 (9th Cir. 2013) .............................................................................. 22

*Nichols v. Chesapeake Oper., LLC*,
   718 F. App'x 736 (10th Cir. 2018) ................................................................. 22, 23

*Nutraceutical Corp. v. Von Eschenbach*,
   459 F.3d 1033 (10th Cir. 2006) ........................................................................... 22

*Opris v. Sincera Reprod. Med.*,
   No. CV 21-3072, 2022 WL 1639417 (E.D. Pa. May 24, 2022) ............................. 33

*Orizon Aero. LLC v. Crumley*,
  No. 23-2069-EFM-KGG, 2023 WL 3002445, at *1–2 (D. Kan. Apr. 19, 2023 ..................... 29

*Perdue v. Hy-Vee, Inc.*,
  455 F. Supp. 3d 749 (C.D. Ill. 2020) ................................................................. 31

*Petrella v. Brownback*,
  697 F.3d 1285 (10th Cir. 2012) ........................................................................ 19

*Redmond, Inc. v. Willow Creek Salt, Inc.*,
  No. 2:17-cv-943, 2018 WL 1972678 (D. Utah Apr. 26, 2018) ............................... 29

*Reece v. AES Corp.*,
  638 F. App'x 755 (10th Cir. 2016) ............................................................... 22, 23

*Remijas v. Neiman Marcus Grp., LLC*,
  794 F.3d 688 (7th Cir. 2015) ............................................................................ 19

*Resnick v. AvMed, Inc.*,
  693 F.3d 1317 (11th Cir. 2012). ....................................................................... 18

*Rodriguez v. Cascade Coll. LLC*,
  532 F. Supp. 3d 1099 (D. Utah 2021) ................................................................. 5

*Sackin v. TransPerfect Glob., Inc.*,
  278 F. Supp. 3d 739 (S.D.N.Y. 2017) ............................................................... 33

*Siloam Springs Hotel, L.L.C. v. Century Sur. Co.*,
  781 F.3d 1233 (10th Cir. 2015) ........................................................................ 23

*Smallman v. MGM Resorts Int'l*,
  638 F. Supp. 3d 1175 (D. Nev. 2022) ................................................................ 14

*Sorensen v. Barbuto*,
  143 P.3d 295 (Utah Ct. App. 2006) ................................................................... 34

*Sorensen v. Polukoff*,
  784 F. App'x 572 (10th Cir. 2019) .................................................................... 14

*Spokeo, Inc. v. Robins*,
  578 U.S. 330 (2016) ................................................................................... 6, 16

*State Farm Mut. Auto. Ins. Co. v. Dyer*,
  19 F.3d 514 (10th Cir. 1994) ........................................................................... 24

*Stien v. Marriott Ownership Resorts, Inc.*,
  944 P.2d 374 (Utah Ct. App. 1997) ........................................................... 35

*Susan B. Anthony List v. Driehaus*,
  573 U.S. 149 (2014) ......................................................................... 6, 16

*Tate v. EyeMed Vision Care, LLC*,
  2023 WL 6383467 (S.D. Ohio Sep. 29, 2023) .............................................. 15, 31

*TransUnion LLC v. Ramirez*,
  141 S. Ct. 2190 (2021) ....................................................................... 6, 12

*Turner v. General Adjustment Bureau, Inc.*,
  832 P.2d 62 (Utah. Ct. App. 1992) ........................................................... 35

*United States v. Rodriguez-Aguirre*,
  264 F.3d 1195 (10th Cir. 2001) ................................................................. 4

*Vodenichar v. Halcón Energy Props., Inc.*,
  733 F.3d 497 (3d Cir. 2013) .................................................................. 22

*Webb v. Injured Workers Pharmacy, LLC*,
  72 F.4th, 365 (1st Cir. 2023) ................................................................ 17

*Whitelock v. Leatherman*,
  460 F.2d 507 (10th Cir. 1972) ............................................................ 24, 25

*Williams v. Steward Health Care Sys., LLC*,
  No. 5:20CV123-RWS-CMC, 2021 WL 7629734 (E.D. Tex. Dec. 16, 2021) ........................ 22

*Woods v. Standard Ins. Co.*,
  771 F.3d 1257 (10th Cir. 2014) .............................................................. 21

*Zurich Am. Ins. Co. v. Ascent Constr., Inc., reconsideration denied*,
  No. 120CV00089DBBCMR, 2022 WL 4016872 (D. Utah Sept. 2, 2022) ........................... 29

*Zurich Am. Ins. Co. v. Ascent Constr., Inc.*,
  No. 1:20-CV-00089-DBB, 2022 WL 280779 (D. Utah Jan. 31, 2022) ......................... 29, 30

**Statutes**

15 U.S.C. § 45 ................................................................................. 30

28 U.S.C. §1332(d)(2)(A) ....................................................................... 21

Utah Code Ann. § 31A-22-307 ................................................................... 28

Utah Code Ann. § 5:4 ................................................................................................ 26

Utah Code Ann. § 78B-4-701 ..................................................................................... 27

Utah Code Ann. § 78B-4-702 ............................................................................... 26, 27

**Other Authorities**

Amer. Medical Assoc., AMA Code of Medical Ethics,
   *https://code-medical-ethics.ama-assn.org/principles* ............................................ 34

Restatement (Second) of Torts § 652B (1977) .......................................................... 35

Utah Cybersecurity Affirmative Defense Act ("CADA") .......................................... 26

**Rules**

Fed. R. Civ. P. 12(b)(1).............................................................................................. 22

Fed.R.Civ.P. 12(b)(6) ................................................................................................ 30

## INTRODUCTION

This Court should deny Defendant Uintah Basin Healthcare's ("UBH" or "Defendant") Motion to Dismiss Plaintiffs' Complaint Under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) or in the Alternative, Summary Judgment Under Rule 56 (the "Motion") because each claim that Plaintiffs Donna Halton, Doris Hyatt, Mandy Keasler, on behalf of her minor son, whose initials are A.K., Christian Miller, Jason Rasmussen, and Mindy Rasmussen (collectively, "Plaintiffs") assert is sufficiently pled. UBH's Motion ignores plausible allegations in the Consolidated Class Action Complaint (the "Complaint" or "Compl.") and well-settled law from this Circuit and around the country. As shown below, Plaintiffs have standing to sue, and none of UBH's arguments are persuasive given Plaintiffs have alleged multiple forms of injury and legally cognizable damages to support their claims. Likewise, Defendant's request for summary judgment in the alternative should be denied because Plaintiffs' allegations leave open a triable question of material fact (which likely necessitates discovery) regarding whether UBH complied with a written security program under the Utah Cybersecurity Affirmative Defense Act ("CADA"), Utah Code Ann. § 78B-4-702, *et seq*.

## FACTUAL BACKGROUND

On or about May 10, 2023, UBH, a healthcare system in Roosevelt, Utah, began issuing data breach notice letters (the "Notice") to individuals whose Private Information was compromised as a result of a hacking incident. *See* Consolidated Complaint, D.E. 24 ("Compl."), ¶¶ 2-3, 20 & 36-37. Based on the Notice received by Plaintiffs and nearly 104,000 other individuals, UBH initially became aware of unusual activity in its network on or about November 7, 2022—***over six months prior to the issuance of the Notice***. Specifically, cybercriminals or

hackers were able to access UBH's network and gain unauthorized access to its computer systems and patient data (the "Data Breach"). *See id.* ¶¶ 4, 33 & 192. As a result, protected health information ("PHI") and personally identifiable information ("PII") (collectively "Private Information") belonging to UBH's patients that received care between March 2012 and November 2022 may have been accessed or exfiltrated without authorization and listed for sale on the dark web. *See id.* ¶¶ 6, 35 & 127 (noting that cybercriminals or hackers stole patient data of 103,974 patients). According to the Notice, Private Information compromised in the Data Breach consisted of highly sensitive patient data including, but not limited to, first and last names, Social Security numbers, dates of birth, medical treatment information and health insurance information that UBH collected and maintained. *See id.* ¶¶ 6 & 34.

In order to receive medical care and services, Plaintiffs were required to provide their Private Information to UBH. *Id.* ¶ 27. In exchange, UBH explicitly through its HIPAA Privacy Policy promised to reasonably protect and safeguard the Private information from unauthorized access and intrusion. *See id.* ¶¶ 27-28. In addition to its HIPAA Privacy Policy, UBH had obligations—created by industry standards, common law and representations made to Plaintiffs and Class Members—to maintain and protect the Private Information entrusted to it by Plaintiffs safely, confidentially and in compliance with all applicable laws. *See id.* ¶¶ 28-30 & 39. But although it received a benefit from Plaintiffs' Private Information, UBH did not—despite the foreseeability of such an attack—take the necessary steps to ensure the security of Private Information. *Id.* ¶ 32. Rather, UBH stored Private Information on a database that was negligently and/or recklessly configured, maintained and/or secured and failed to implement basic security measures, like password protection, encryption and/or multifactor authentication. *Id.* ¶¶ 89 & 243.

As a result of UBH's failure to take reasonable and appropriate measures to protect the highly sensitive Private Information entrusted to it, Plaintiffs have suffered damages in the form of theft of their valuable Private Information, imminent and impending injury flowing from fraud and identity theft posed by their Private Information being placed in the hands of cyber-criminals and a diminution in the value of their Private Information. *See id*. ¶¶ 121, 134, 146, 160, 172 & 186. Plaintiffs have also lost time and expended effort in an attempt to ameliorate, mitigate and address the consequences of the Data Breach (including steps taken at the direction of UBH). *Id*. Plaintiffs further allege actual injuries in the form of an increase in spam calls, texts and/or emails and personal information being disseminated on the Dark Web. *See id*. ¶¶ 127, 153, 179 & 269.

Critically, given the sensitivity of the data involved, Plaintiffs and Class Members remain at a continuing and heightened risk of further breaches so long as UBH fails to undertake appropriate and adequate measures. *See, e.g.*, *id*. ¶¶ 5, 9 & 219. Notably, given the theft of static information—like Social Security numbers—this risk will remain with Plaintiffs and Class Members for the rest of their lives. *See id*. ¶¶ 97 & 105. As a result of UBH's conduct, on August 11, 2023, Plaintiffs filed their Consolidated Complaint asserting claims for negligence, negligence *per se*, breach of implied contract, unjust enrichment, breach of confidence, breach of fiduciary duty, invasion of privacy and declaratory and injunctive relief on behalf of themselves and all persons similarly situated. *See id*. ¶¶ 200-311.[1] On October 16, 2023, UBH filed its motion to dismiss or in the alternative summary judgment. *See* D.E. 31.

---

[1]On June 14, 2023, this Court consolidated this lead case, Case No. 2:23-cv-00322-HCN-CMR, with two related cases, *Keasler v. Uintah Basin Healthcare*, Case No. 2:23-cv-00323-TC, and *Miller v. Uintah Basin Healthcare*, Case No. 2:23-cv-00330-TC. *See* D.E. 17. On July 28, 2023, the Court further consolidated this lead case with two additional related cases, *Halton v. Uintah Basin Healthcare*, Case No. 2:23-cv-00373-TC-JCB, and *Hyatt v. Uintah Basin Medical Center*,

## **LEGAL STANDARD**

UBH seeks dismissal on three separate bases: lack of subject matter jurisdiction under Rule 12(b)(1), failure to state a claim upon which relief can be granted further to Rule 12(b)(6) and summary judgment under Rule 56. None of the bases proffered by UBH provide an actual basis for dismissal as Plaintiffs easily establish Article III standing to bring this action, have adequately stated the various claims in their Complaint and triable issues of material fact remain the resolution of which, at the very least, require discovery before proceeding to summary judgment adjudication.

Under Rule 12(b)(1), a party may challenge the Court's jurisdiction over the subject matter in two ways: facially, thereby questioning the sufficiency of the complaint or factually, where a party goes beyond the allegations in the complaint and challenges the facts. *See, e.g.*, *United States v. Rodriguez-Aguirre*, 264 F.3d 1195, 1203 (10th Cir. 2001); *Kilgore v. Easterseals-Goodwill N. Rocky Mountain, Inc.*, 2023 WL 4599321, at *3 (D. Utah July 18, 2023) (denying motion to dismiss in a data breach case and allowing a three-month discovery period). In a facial attack, the district court must accept the allegations in the complaint as true whereas in a factual attack, the court does not presume the truthfulness of the complaint's factual allegations, allowing wide discretion for a limited evidentiary hearing to resolve disputed facts. *See, e.g.*, *Mitchell v. Wells Fargo Bank*, 355 F. Supp. 3d 1136, 1149-50 (D. Utah 2018). Here, UBH asserts both facial and factual challenges concerning the allegations made by each of the Plaintiffs in the Complaint. *See* Motion, D.E. 31 ("Mot." or "MTD") at 20-25.

---

Case No. 2:23-cv-00377. *See* D.E. 23. The Consolidated Class Action Complaint was then filed on August 11, 2023. *See* D.E. 24.

When a party challenges the sufficiency of the allegations further to Rule 12(b)(6), a complaint should only be dismissed if the facts alleged fail to state a "plausible" claim for relief. *See, e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). This plausibility standard "is not akin to a probability requirement" but merely requires "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Equal Emp. Opportunity Comm'n v. Roark-Whitten Hosp. 2, LP*, 28 F.4th 136, 146 (10th Cir. 2022); *see also Mitchell*, 355 F. Supp. 3d at 1156, 1160 & 1164-65 (D. Utah 2018) (denying defendant's 12(b)(6) motion on various state law claims).

Finally, although UBH may move for summary judgment to test an affirmative defense in a motion to dismiss, "[t]he defendant ... must demonstrate that no disputed material fact exists regarding the affirmative defense asserted." *Helm v. Kansas*, 656 F.3d 1277, 1284 (10th Cir. 2011) (quoting *Hutchinson v. Pfeil*, 105 F.3d 562, 564 (10th Cir.1997)). In doing so, UBH "must show that there is no dispute of material fact as to each element of [the affirmative] defense." *Rodriguez v. Cascade Coll. LLC*, 532 F. Supp. 3d 1099, 1117 (D. Utah 2021) (finding defendant not entitled to summary judgment because "there are disputes of material fact as to whether it maintained reasonable procedures to avoid violations of the FDCPA"). Only after UBH makes this showing must Plaintiffs "then demonstrate with specificity the existence of a disputed material fact." *Helm*, 656 F.3d at 1284. In determining whether summary judgment is proper, courts view the evidence in the light most favorable to the non-moving party. *See id.* (citation omitted).

## ARGUMENT

### I.   PLAINTIFFS ESTABLISH ARTICLE III STANDING

To meet the case-or-controversy requirement, and thus have standing under Article III of the Constitution, a plaintiff must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).

#### A.   Plaintiffs Sufficiently Allege an Injury-In-Fact.

To establish the injury-in-fact element of the Article III standing inquiry, "a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 339 (stating that an injury is concrete when it is "real," not "abstract"). Importantly, "various intangible harms can also be concrete" such as "reputational harms, disclosure of private information, and intrusion upon seclusion." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2204 (2021). Likewise, intangible injuries like the threat of future injury may be concrete. *See, e.g., Spokeo*, 578 U.S. at 340. "An allegation of future injury may suffice if the threatened injury is 'certainly impending,' or there is a "'substantial risk" that the harm will occur.'" *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014). Finally, a plaintiff need not allege they suffered a harm "traditionally recognized" under the law since even an injury with a "close relationship" to a recognized harm will suffice under Article III. *See TransUnion*, 141 S. Ct. at 2197 ("Central to assessing concreteness is whether the asserted harm has a close relationship to a harm traditionally recognized as providing a basis for a lawsuit in American courts") (internal citation and quotation omitted).

Under these well-established principles, Plaintiffs have sufficiently pleaded facts to support finding standing for multiple reasons. First, UBH's Data Breach resulted in the disclosure of Plaintiffs' and Class Members' Private Information, a harm "traditionally recognized" under Article III. *See* Compl. ¶ 127 (Plaintiff Hyatt suffered from an increase in spam calls, texts, and/or emails and her personal information being disseminated on the Dark Web). Second, UBH's Data Breach allowed criminals to commit fraud using Plaintiffs' identities and financial accounts. Plaintiff Halton, for example, suffered from the fraudulent misuse of her compromised Private Information when she had "two separate unauthorized charges to the debit card that she used at Uintah." *Id.* ¶ 114. Courts across the country generally find that actual misuse of the compromised data is a "concrete" injury in the data breach context. *See, infra,* at 10-11. Third, the Data Breach resulted in the substantial and imminent risk of future fraud and identity theft—a reality even UBH acknowledged in its Data Breach Notice sent to Plaintiffs and Class Members. Fourth, Plaintiffs spent time, money and resources remediating the current and future negative impacts the Data Breach has had and will have on their lives—injuries that confer standing. Finally, Plaintiffs suffered real fear, anxiety, and worry because of the Data Breach—a non-economic injury recognized as sufficient to establish Article III standing. As detailed below, UBH cannot redefine these harms as "speculative" by misstating the law or misconstruing the facts. UBH's challenge to Plaintiffs' Article III standing should be rejected.

### 1. Evidence of Mitigation Costs Supports a Finding of Standing.

Plaintiffs allege that, to protect themselves from identity theft following the Data Breach, they devoted resources to (i) remediating the injuries they suffered, and (ii) mitigating their chances of suffering such injuries again. *See* Compl. ¶¶ 9, 113, 121, 126-27, 134, 139, 146, 151,

160, 165, 172, 177, 186, 216 & 234. This included spending a significant amount of time and/or money monitoring their credit and other accounts for fraudulent activity. *Id.*

In *In re Equifax Inc. Customer Data Security Breach Litig*ation, the Eleventh Circuit addressed when it is appropriate to incur injuries "while mitigating a risk of harm, such as purchasing a credit freeze or spending time or effort to minimize a risk of identity theft." 999 F. 3d 1247, 1261 (11th Cir. 2021) (explaining that "the time, money, and effort spent mitigating" a substantial risk of injury are also concrete injuries). The *Equifax* Court further clarified that in cases where there is a substantial risk of future identity theft, individuals can recover damages for reasonable expenses incurred to mitigate that risk. *See id.* at 1257. Additionally, the Court noted that even plaintiffs who had not yet suffered any identity theft could recover their mitigation expenses because "[t]he actual identity theft already suffered by some Plaintiffs further demonstrates the risk of identity theft all Plaintiffs face—though actual identity theft is by no means required when there is a sufficient risk of identity theft." *Id*. In *Clemens v. ExecuPharm Inc*., 48 F.4th 146, 157 (3d Cir. 2022), the Third Circuit reached a similar conclusion, holding that the time and money incurred by plaintiff to mitigate the fallout of the data breach was a concrete injury in light of the facts that (a) the data breach was a ransomware attack carried out by cybercriminals, and (b) the impacted information was encrypted, held for ransom, and likely sold on the dark web.[2] *See also Bohnak v. Marsh & McLennan Cos., Inc.*, 79 F.4th 276, 286 (2d Cir.

---

[2] *See also In re Mednax Servs*., 603 F. Supp. 3d 1183, 1204 (S.D. Fla. May 10, 2022) (finding that because plaintiffs alleged a substantial and imminent risk of future identity theft, alleged mitigation costs "are sufficiently concrete to establish injuries in fact"); *Gilbert v. Bioplus Specialty Pharmacy Servs., LLC*, 2023 WL 3555006, at *5 (M.D. Fla. Mar. 3, 2023) (same); *Desue v. 20/20 Eye Care Network, Inc.*, 21-CIV-61275-RAR, 2022 WL 796367, at *6 (S.D. Fla. Mar. 15, 2022) (same).

2023 ("[W]here plaintiffs have shown a substantial risk of future identity theft or fraud, any expenses they have reasonably incurred to mitigate that risk likewise qualify as injury in fact.") (quotation omitted).

It is overwhelmingly clear that the losses resulting from efforts to remediate and mitigate the fallout of a data breach are cognizable injuries-in-fact under Article III. As the court in *Dieffenbach v. Barnes & Noble, Inc*. held, "[t]he plaintiffs have standing because the data theft may have led them to pay money for credit-monitoring services, because unauthorized withdrawals from their accounts cause a loss (the time value of money) even when banks later restore the principal, and because the value of one's own time needed to set things straight is a loss from an opportunity-cost perspective." 887 F.3d 826, 828 (7th Cir. 2018); *see also In re Gallagher Data Breach Litig*., 631 F. Supp. 3d 573, 587 (N.D. Ill. Sept. 28, 2022) (finding plaintiff "alleged injury in the form of time lot dealing with the consequences of the Data Breach, including verifying the accuracy of the notices they received and self-monitoring their accounts."); *McCreary v. Filters Fast LLC*, 3:20-CV-595-FDW-DCK, 2021 WL 3044228, at *6-7 (W.D.N.C. July 19, 2021) (conferring Article III standing for the "costs associated with the detection and prevention of identity theft and unauthorized use of their financial accounts, as well as costs associated with mitigating the actual and future consequences of the data breach."); *In re 21st Century Oncology Cust. Data Sec. Breach Litig*., 380 F. Supp. 3d 1243, 1256 (M.D. Fla. 2019) ("[I]n data breach cases, where courts have found an injury in fact based on an increased risk of identity theft, they have also found an adequate injury in fact based on the harm incurred by protecting against that risk").

That is precisely what Plaintiffs allege here. For example, Plaintiff Halton alleges that criminals accessed her payment accounts, causing her to spend "approximately 7 to 8 hours calling her bank, driving to her bank, getting a new card, changing automatic billing instructions, dealing with hospital staff, and other necessary mitigation efforts." Compl. ¶ 113. Plaintiff Miller alleges he suffered an unauthorized charge to his bank account from an unknown company, causing him to spend "approximately 15 hours researching the Data Breach, verifying the legitimacy of the notice letter, signing up for the credit monitoring service, reviewing his bank accounts, monitoring his credit report, changing his passwords and payment account numbers, and other necessary mitigation efforts." *Id*. ¶¶ 151, 152. The Rasmussen Plaintiffs "spent approximately 5 to 10 hours researching the Data Breach, verifying the legitimacy of the notice letter, signing up for the credit monitoring service, reviewing [their] bank accounts, monitoring [their] credit report, changing [their] passwords and payment account numbers, and other necessary mitigation efforts." *Id*. ¶ 177. To further protect herself, Mrs. Rasmussen also "purchased identity theft and password protection services at a cost of $18.00 per month." *Id.* ¶ 178. Plaintiff Hyatt "spent several hours on reasonable efforts to mitigate the impact of the Data Breach, including researching and enrolling in the credit monitoring and identity theft insurance offered by UBH, contacting credit bureaus to place freezes on her credit, contacting [her] banks, securing her financial accounts, and other necessary mitigation efforts." *Id.* ¶ 126. These mitigation efforts certainly qualify as concrete injuries under Article III due to the actual fraud and increased risk of experiencing additional fraud detailed in Plaintiffs' allegations.

### 2.   Plaintiffs Suffering from Unauthorized Charges Provides Standing.

As a result of the Data Breach, Plaintiff Halton and Plaintiff Miller suffered actual harm in the form of financial fraud on their respective payment accounts. Plaintiff Halton experienced "two separate unauthorized charges to the debit card that she used at Uintah" and Plaintiff Miller experienced "an unauthorized pending charge in the amount of $9.95 to his bank checking account from an unknown company." *Id.* ¶¶ 114, 152.

UBH's contention that to support standing, Plaintiffs must be held financially liable for unauthorized charges is misguided. *See* Mot. at 20. In *Gaddy v. Long & Foster Companies, Inc.,* the court found that fraudulent charges on plaintiffs' financial accounts were "quintessentially concrete" harms and that those plaintiffs had "adequately alleged an injury-in-fact through the actual misuse of their personal information." CV212396RBKEAP, 2023 WL 1926654, at *8 (D.N.J. Feb. 10, 2023). There, the court rejected defendant's argument that only unreimbursed payments can serve as injuries noting that "[e]ven though the plaintiffs had remedied the unauthorized charges, they had still suffered intangible harms to their common-law privacy interests through the wrongful use and dissemination of their private information." *Id.* at *22-23. The court further reasoned that "[m]isuse of financial information is a cognizable, intangible injury that, even without financial loss, is sufficient to confer standing." *Id.* at *24.[3] This Court should reach a similar conclusion.

---

[3] *See also In re Horizon Healthcare Servs. Inc. Data Breach Litig.*, 846 F.3d 625, 638-39 (3d Cir. 2017) (explaining that "'unauthorized disclosures of information' have long been seen as injurious[,]" and "improper dissemination of information can itself constitute a cognizable injury") (emphasis in original) (quoting *In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d 262, 274 (3d Cir. 2016)); *McCreary*, 2021 WL 3044228, at * (conferring Article III standing for "unauthorized charges on [Plaintiffs'] payment card accounts"); *Dieffenbach*, 887 F.3d at 828

### 3. Plaintiffs' Emotional Distress in the Forms of Fear, Anxiety, Annoyance, Inconvenience & Nuisance are Evidence of Standing.

Plaintiffs allege they suffered emotional and mental distress due to the Data Breach, including feelings of fear, anxiety, annoyance, inconvenience and nuisance. *See* Compl. ¶¶ 118, 131, 143, 157, 169, 183. Plaintiffs suffered from and continue to suffer emotional distress because their Private Information is now in the hands of criminals who have misused it and will likely misuse it again.

"A plaintiff's knowledge that he or she is exposed to a risk of future physical, monetary or reputational harm could cause its own current emotional or psychological harm." *TransUnion*, 141 S. Ct. at 2211, n. 7 (2021); *see also Bowen v. Paxton Media Grp., LLC*, No. 5:21- CV-00143, 2022 WL 4110319, at *5 (W.D. Ky. Sept. 8, 2022) (finding Article III standing when plaintiffs "suffered emotional damages related to the breach, which *TransUnion* specifically recognized as a potential concrete injury conferring Article III standing"); *Mednax*, 603 F. Supp. at 1203 (concluding that allegations of emotional distress, coupled with the substantial risk of future harm, are sufficiently concrete to establish standing in a claim for damages."); *Dannunzio v. Liberty Mut. Ins. Co.,* CV 21-1984, 2021 WL 5177767, at *6 (E.D. Pa. Nov. 8, 2021) (denying defendant's motion to dismiss when plaintiff "adequately stated a claim for actual damages based on invasion of privacy and emotional distress."). Accordingly, Plaintiffs' allegations of emotional and mental distress suffered as a result of the Data Breach are cognizable injuries-in-fact sufficient to establish standing for their claims.

---

("unauthorized withdrawals from [Plaintiffs'] accounts cause a loss (the time value of money) even when banks later restore the principal").

**4.   Allegations of Loss of Privacy & Diminution in Value of Private Information Support a Finding of Standing.**

"[A] growing number of federal courts have now recognized Loss of Value of PII as a viable damages theory." *In re Anthem, Inc. Data Breach Litig.*, 15-MD-02617-LHK, 2016 WL 3029783, at *43 (N.D. Cal. May 27, 2016) (finding plaintiffs plausibly alleged injury where they alleged that their PII was a valuable commodity to identity thieves, that an economic market existed for the PII, and that the value of their PII decreased as a result of the data breach); *see also In re Yahoo! Inc. Cust. Data Sec. Breach Litig.*, 16-MD-02752-LHK, 2017 WL 3727318, at *14 (N.D. Cal. Aug. 30, 2017) ("loss of value in [] private information is sufficient to plausibly allege injury arising from the Data Breach"); *Feins v. Goldwater Bank NA*, CV-22-00932-PHX-JJT, 2022 WL 17552440, at *8 (D. Ariz. Dec. 9, 2022) ("Courts have also recognized the diminished value of PII as a cognizable injury resulting from a data breach[.]"). A plaintiff can "recover damages for the lost value of private information if the plaintiff plausibly alleges the existence of a market for the information and how the value of such information could have decreased due to its disclosure." *In re USAA Data Sec. Litig.*, 621 F. Supp. 3d 454, 469 (S.D.N.Y. Aug. 11, 2022).

Here, Plaintiffs establish the existence of various markets for their PII, detailing the lucrative nature of consumer PII—including Social Security numbers—on the "black market." *See* Compl. ¶¶ 91, 100, 101, 105. Plaintiffs allege the diminution in value of their Private Information because of the Data Breach. Indeed, due to the public disclosure of their Private Information, UBH has foregone, on Plaintiffs' behalf, any opportunity Plaintiffs would cognizably have to legitimately sell their Private Information for economic value now that it is exposed to the public.

Notably for purposes of UBH's motion to dismiss, the actual value of Plaintiffs' Private Information is a factual question to be determined at a later stage of these proceedings. *See, e.g.*,

13

*Sorensen v. Polukoff*, 784 F. App'x 572, 579 (10th Cir. 2019) ("The actual value of the hard drive and its contents is a factual question to be resolved at the summary-judgment stage or trial.").To adequately allege injury sufficient to establish Article III standing, Plaintiffs are not required to allege the attempted sale of their Private Information nor that they "were forced to accept a decreased price for their information." *In re Marriott Int'l, Inc.*, 440 F. Supp. 3d 447, 461 (D. Md. Feb. 21, 2020) (finding that "the value of consumer personal information is not derived solely (or even realistically) by its worth in some imagined marketplace . . . but rather in the economic benefit the consumer derives from being able to purchase goods and services remotely and without the need to pay in cash or a check.") Therefore, this Court should find that Plaintiffs established injury-in-fact based on the loss of value of their Private Information.

### 5. Due to Loss of Benefit of the Bargain Plaintiffs Have Standing.

Injury from the lost benefit of a bargain is well recognized as a cognizable harm in the data breach context. *See, e.g.*, *Smallman v. MGM Resorts Int'l*, 638 F. Supp. 3d 1175, 1189 (D. Nev. 2022) (collecting cases recognizing benefit of the bargain damages based on failure to provide adequate data security). Receiving the benefit of one's bargain is a fundamental contract principle and the cornerstone of contract jurisprudence; "[t]he benefit-of-the-bargain theory aims to compensate a plaintiff who did not receive what she bargained for. In this regard, the benefit-of-the-bargain theory is a species of expectation damages." *In re Takata Airbag Prod. Liab. Litig.*, 15-MD-02599, 2022 WL 17546365, at *2 (S.D. Fla. Nov. 10, 2022); *see also In re Premera Blue Cross Cust. Data Sec. Breach Litig.*, 198 F. Supp. 3d 1183, 1204 (D. Or. 2016) ("Plaintiffs would not have purchased insurance policies from Premera had they known about Premera's actual data security practices"); *In re Target Corp. Cust. Data Sec. Breach Litig.*, 66 F. Supp. 3d 1154, 1178

(D. Minn. 2014) (accepting plaintiffs' damages theory by alleging that they "would not have shopped" had they known about Target's data security issues).

Similarly, here, had Plaintiffs and the Class known that Defendant had not implemented and maintained adequate data security measures to secure their Private Information, they would have sought alternative treatment options. *See* Compl. ¶ 267. Plaintiffs reasonably expected UBH, as their healthcare provider, to protect their Private Information. Unfortunately, UBH failed to meet this expectation and, as a result, Plaintiffs and Class Members did *not* receive the benefit of their bargain. Thus, UBH derived a benefit from Plaintiffs and Class Members without meeting their reasonable expectations of proper data security and Plaintiffs have suffered an injury from the lost benefit of their bargain that is sufficient to confer Article III standing.

### 6.   An Increase in Spam is Evidence of Standing.

As a result of the Data Breach, Plaintiffs Hyatt, Miller and Mrs. Rasmussen adequately allege they have experienced an increase in spam communications that began soon after their Private Information was compromised as a result of the Data Breach. *See* Compl. ¶¶ 127, 153, 179. Courts have found the burden of increased spam and phishing communications satisfies the Article III standing inquiry. *See, e.g.*, *Tate v. EyeMed Vision Care, LLC*, 2023 WL 6383467, at *5 (S.D. Ohio Sep. 29, 2023) (finding that allegations of a significantly increased number of scam and phishing calls, texts and emails were sufficient to establish Article III standing, reasoning that such communications annoy, harass, and, in the case of phone calls, temporarily claim control over an individual's personal device); *Dickson v. Direct Energy, LP*, 69 F.4th 338, 345 (6th Cir. 2023)

(holding that such unsolicited calls and messages constitute cognizable Article III injuries in fact, likening unsolicited calls and messages to the common law tort of intrusion-upon-seclusion).[4]

### 7.   Because Plaintiffs will Suffer Future Damages, they have Standing.

UBH relies on *Clapper v. Amnesty International USA* to support its position that allegations of future injury are insufficient to confer standing. *See* Mot. at 18 (citing 568 U.S. 398 (2013). However, in a more recent decision, the Supreme Court found that intangible injuries like the threat of future injury may be concrete. *See Spokeo*, 578 U.S. at 340. "An allegation of future injury may suffice if the threatened injury is certainly impending, or there is a substantial risk that the harm will occur.'" *Susan B. Anthony List*, 573 U.S. at 158 (2014) (internal quotations omitted). Several Circuit Courts look to three non-exclusive factors set forth in *McMorris v. Carlos Lopez & Assocs., LLC*, to determine whether there is an actual or imminent injury sufficient to confer Article III standing: (1) whether the plaintiff's data has been exposed as part of a targeted attempt to obtain the data; (2) whether any portion of the data has already been misused, even if plaintiffs themselves did not experience any fraud; and (3) whether the type of data that has been exposed is sensitive such that there is a high risk of identity theft or fraud. *See* 995 F.3d 295, 300-01 (2d Cir. 2021);

---

[4] *See also Flores v. AON Corp.*, No. 1-23-0140, 2023 IL App (1st) 230140, at *16 (Sept. 29, 2023) ("The alleged injuries suffered by plaintiffs (the fraudulent charges and the lost time spent dealing with increased spam messages and targeting marketing) are distinct and palpable injuries that satisfy standing."); *Craftwood II, Inc. v. Generac Power Systems, Inc.*, 920 F.3d 479, 481 (7th Cir. 2019) (holding that the time lost reading a junk fax before discarding it is a concrete injury satisfying standing); *Holmes v. Elephant Ins. Co.*, No. 3:22CV487, 2023 WL 4183380, at *5 (E.D. Va. June 26, 2023) (citing *Garey v. James S. Farrin, P.C.*, 35 F.4th 917, 921-22 (4th Cir. 2022)) ("In *Garey*, the Fourth Circuit determined that receiving unsolicited mail closely paralleled the tort of loss of privacy and recognized it as an injury-in-fact. Spam texts and calls invade an individual's privacy as much or perhaps even more than unsolicited mail. Holmes has sufficiently pleaded an injury-in-fact.") (internal citation omitted).

*see also Webb v. Injured Workers Pharmacy, LLC*, 72 F.4th, 365, 375 (1st Cir. 2023); *Bohnak v. Marsh & McLennan Cos., Inc.*, 79 F.4th 276, 280 (2d Cir. 2023), *Clemens*, 48 F.4th at 157.

While the Tenth Circuit has not yet weighed in on Article III standing in a data breach case, the *McCombs v. Delta Group Electronics., Inc.,* a case cited by Defendant is easily distinguishable since the *McCombs* plaintiff failed to provide sufficiently detailed allegations concerning any actual misuse of her compromised information. *See* Mot. at 18 (citing 1:22-CV-00662-MLG-KK, 2023 WL 3934666, at *4-*6 (D.N.M. June 9, 2023). Here, however, Plaintiffs provide detailed allegations sufficient to satisfy the *McMorris* factors. Specifically, Plaintiffs adequately demonstrate standing to bring their claims based not only on the occurrence of the Data Breach and exfiltration of the most sensitive types of data (including Social Security numbers) by cybercriminals, but by showing that they suffered actual instances of fraudulent misuse of the compromised Private Information that can be directly traced back to the Data Breach. *See, e.g.*, Compl. ¶¶ 114, 152.

Additionally, it is not merely hypothetical that Plaintiffs could suffer additional identity theft in the future if their sensitive Private Information remains in UBH's possession. *See, e.g.*, *Mednax*, 603 F. Supp. 3d at 1205 (finding plaintiffs' alleged injuries "constitute injuries in fact sufficient to satisfy claims for injunctive relief and damages."). "There is no need for speculation where Plaintiffs allege that their data has already been stolen and is now in the hands of ill-intentioned criminals." *Galaria v. Nationwide Mut. Ins. Co*., 663 Fed. Appx. 384, 388 (6th Cir. 2016). Indeed, "an increased risk of identity theft is more likely to constitute an injury in fact where there is evidence that a third-party has accessed the sensitive information and/or already used the compromised data fraudulently." *21st Century Oncology*, 380 F. Supp. 3d at 1254. Therefore,

Plaintiffs' allegations of an imminent and substantial risk of future harm as alleged in their Consolidated Complaint are sufficiently pled and adequately demonstrate injury-in-fact under an Article III standing analysis.

### B.  Plaintiffs' Injuries Are Fairly Traceable to UBH's Conduct.

Article III standing requires that Plaintiffs' injuries are "fairly traceable to the challenged action of the defendant[.]" *Benham v. Ozark Materials River Rock, LLC*, 885 F.3d 1267, 1272 (10th Cir. 2018). "[T]he 'traceability' of a plaintiff's harm to the defendant's actions need not rise to the level of proximate causation." *In re EpiPen Mktg., Sales Practices & Antitrust Litig.*, 336 F. Supp. 3d 1256, 1333 (D. Kan. Aug. 20, 2018). "Even a showing that a plaintiff's injury is indirectly caused by a defendants' actions satisfies the fairly traceable requirement." *Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1324 (11th Cir. 2012). "'[F]airly traceable' does not mean 'certainly traceable.'" *Mednax*, 603 F. Supp. 3d at 1205.

Plaintiffs easily satisfy this standard because they allege that the Data Breach occurred as a result of UBH's conduct and that their Private Information was exfiltrated by malicious cybercriminals, resulting in documented incidents of fraud, increases in spam emails, text messages, and phone calls, economic losses, lost time, loss of privacy, diminution in value of their Private Information, and emotional injuries. *See, e.g.*, Compl. ¶¶ 8-10, 118, 131, 143, 157, 169, and 183. These allegations constitute injuries-in-fact that clearly flow from UBH's negligent conduct. At the pleading stage, these allegations are sufficient to satisfy the "fairly traceable" standing requirement because, absent UBH's misconduct, Plaintiffs would *not* have been harmed. Notably, the standard UBH inaccurately proffers is too strict for this early stage of the proceedings and conflates the merits of the case with standing. *Compare* Mot. at 20, *with Petrella v.*

*Brownback*, 697 F.3d 1285, 1295 (10th Cir. 2012) ("The standing inquiry, at the motion to dismiss

stage, asks only whether the plaintiff has sufficiently alleged a cognizable injury, fairly traceable

to the challenged conduct that is likely to be redressed by a favorable judicial decision.")..

Furthermore, even if UBH did have a plausible argument on traceability, many courts have still

rejected motions to dismiss raising similar traceability challenges to standing in data breach cases,

finding such better suited for a later stage in the litigation. *See, e.g., Fero v. Excellus Health Plan,

Inc.*, 236 F. Supp. 3d 735, 757, 758 (W.D.N.Y. 2017) (collecting cases); *Lewert v. P.F. Chang's

China Bistro, Inc.*, 819 F.3d 963, 969 (7th Cir. 2016) (same); *Remijas v. Neiman Marcus Grp.,

LLC*, 794 F.3d 688, 696 (7th Cir. 2015) (same); *Target*, 66 F. Supp. 3d at 1159 (same).

### C.  Plaintiffs' Injuries Are Redressable.

"To satisfy the redressability prong of the standing test, the plaintiff must demonstrate that

a substantial likelihood exists that the relief requested will redress the injury claimed." *Hapka v.

CareCentrix, Inc.*, No. 16-2372-CM, 2016 WL 7336407, at *4 (D. Kan. Dec. 19, 2016). UBH

argues that Plaintiffs failed to establish how a favorable decision would remedy their harms. *See*

Mot. At 22. However, Plaintiffs seek various forms of relief that, given a favorable decision, would

redress their injuries including an order instructing UBH to purchase or provide funds for lifetime

credit monitoring and identity theft insurance to Plaintiffs and Class Members. *See* Compl., *Prayer

for Relief*. Furthermore, Plaintiffs express the irreparable injury and hardship that they will

continue to face without a favorable decision and issuance of an injunction, especially since

Plaintiffs' and Class Members' Private Information remains in UBH's possession. *See id.* ¶¶ 307-

311. Thus, Plaintiffs' allegations and requested relief satisfy the redressability element of the

Article III standing inquiry. In sum, UBH's motion to dismiss Plaintiffs' Complaint under Rule 12(b)(1) for lack of Article III standing should be denied.

## II.   UBH HAS FAILED TO CARRY ITS BURDEN TO SHOW THAT AN EXCEPTION TO CAFA APPLIES.

For both legal and factual reasons, UBH's Rule 12(b)(1) factual challenge to Article III standing, through which it argues that "plaintiffs fail to plead sufficient facts to establish diversity jurisdiction under CAFA[,]" must fail. *See* Mot. At 23. As an initial matter, Plaintiffs undeniably plead sufficient facts to establish diversity jurisdiction under CAFA. Under the plain language of CAFA, 28 U.S.C. § 1332(d)(2), a federal district court has original subject matter jurisdiction "over class actions involving [1] at least 100 members and [2] over $5 million in controversy when [3] minimal diversity is met (between at least one defendant and one plaintiff-class member)." *Dutcher v. Matheson*, 840 F.3d 1183, 1190 (10th Cir. 2016) (citing *Coffey v. Freeport McMoran Copper & Gold*, 581 F.3d 1240, 1243 (10th Cir. 2009) (*per curiam*). The requirements of minimal diversity, as codified in Section 1332(d)(2), can be met if "(A) any member of a class of plaintiffs is a citizen of a State different from any defendant."

Here, Plaintiffs have met each requirement for diversity jurisdiction under CAFA. Plaintiffs allege, and UBH does not dispute, that the size of the proposed class includes well over 100 members, and in fact it exceeds 103,000 individuals—current and former patients—whose data was compromised in the Data Breach. *See* Compl. ¶ 192; *see also* Mot. at 24 ("The proposed class is the 103,974 patients that received care with UBH between March 2012 and November 2022."). Next, Plaintiffs allege, and UBH does not dispute, that the "amount in controversy exceeds $5 million, exclusive of interest and costs." *See* Compl. ¶ 21. And finally, Plaintiffs have sufficiently alleged minimal diversity. To allege minimal diversity, Plaintiffs must merely identify

that "*any member* of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. §1332(d)(2)(A). Neither party disputes that UBH is a citizen of Utah. *Id.* ¶ 20; Mot. at 23. Plaintiffs identify several publicly posted state data breach sites that delineate the number of affected individuals from states other than Utah. To establish minimal diversity, Plaintiffs relied on limited publicly available information, which was provided by UBH to State Attorneys General. *See* Compl. ¶ 21 n.1. As UBH cites and enumerates in its motion (and does not dispute), the publicly available information about Class Members includes: "16 Maine residents were impacted; 1120 Texas residents were impacted; 72 Massachusetts residents were impacted; [and] 59 Indiana residents were impacted[.]" Mot. at 24. Thus, UBH does not, in fact, dispute that Plaintiffs have met all of the requirements of pleading CAFA jurisdiction based on minimal diversity.

UBH's argument is that *an exception* to CAFA jurisdiction **may** apply here. *See* Mot. 24-25. However, as the Tenth Circuit explained, CAFA's "provisions should be read broadly, with a strong preference that interstate class actions should be heard in a federal court . . .." " *Woods v. Standard Ins. Co.*, 771 F.3d 1257, 1262 (10th Cir. 2014); *see also Dutcher,* 840 F.3d at 1190. A CAFA exception is "a narrow exception that was carefully drafted to ensure that it does not become a jurisdictional loophole and all doubts are resolved in favor of exercising jurisdiction over the case." *Dutcher*, 840 F.3d at 1190 (internal quotation marks omitted); *see also Lax v. APP of New Mexico ED, PLLC*, No. 22-2057, 2022 WL 2711230, at *3 (10th Cir. July 13, 2022).

The party asserting that an exception to CAFA jurisdiction applies—here, UBH—bears the burden of proof. *Id.* More frequently, this issue arises when a defendant removes a class action to federal court and plaintiffs move to remand. *See, e.g., Woods*, 771 F.3d at 1257; *Dutcher v. Matheson*, 840 F.3d at 1190; *Reece v. AES Corp.*, 638 F. App'x 755 (10th Cir. 2016). However,

looking beyond the Tenth Circuit demonstrates that UBH's strategy of questioning federal jurisdiction via a Rule 12(b)(1) motion, although unusual, is not unique. Uniformly, these cases shift the burden of proving the applicability of the CAFA exception to the defendant. *See, e.g.*, *Jackson v. Madison Sec. Grp., Inc.*, No. 21-CV-8721 (JGK), 2022 WL 4538290, at *2 (S.D.N.Y. Sept. 28, 2022) (citing *Anirudh v. CitiMortgage, Inc.*, 598 F. Supp. 2d 448, 451 (S.D.N.Y. 2009) (the party asserting a CAFA exception "bears the burden of proving the exception applies.")); *Williams v. Steward Health Care Sys., LLC*, No. 5:20CV123-RWS-CMC, 2021 WL 7629734, at *13 (E.D. Tex. Dec. 16, 2021), *report & recommendation adopted*, No. 520CV00123RWSCMC, 2022 WL 575939 (E.D. Tex. Feb. 25, 2022) (same); *Hollinger v. Home State Cnty. Mut. Ins. Co.*, No. 5:09-CV-118, 2010 WL 11530632, at *2 (E.D. Tex. Aug. 5, 2010), *aff'd sub nom. Hollinger v. Home State Mut. Ins. Co.*, 654 F.3d 564 (5th Cir. 2011) (same).

In the Tenth Circuit, the party with the burden of proof to show the applicability of a CAFA exception must do so by a preponderance of the evidence. *See, e.g.*, *Nichols v. Chesapeake Oper., LLC*, 718 F. App'x 736, 739–40 (10th Cir. 2018) (citing *Mondragon v. Capital One Auto Fin.*, 736 F.3d 880, 884 (9th Cir. 2013)); *Vodenichar v. Halcón Energy Props., Inc.*, 733 F.3d 497, 503 (3d Cir. 2013); *In re Sprint Nextel Corp.*, 593 F.3d 669, 673 (7th Cir. 2010); *Dutcher v. Matheson*, 840 F.3d at 1189, 1190). "'The preponderance of the evidence standard requires the party with the burden of proof to support its position with the greater weight of the evidence.'" *Nichols*, 718 F. App'x at 40 (quoting *Nutraceutical Corp. v. Von Eschenbach*, 459 F.3d 1033, 1040 (10th Cir. 2006)).

UBH's narrow reading of its burden of proving Class Members' citizenship is unsupported by the Tenth Circuit,[5] which has rejected "the applicability of a rebuttable presumption of citizenship in the context of a CAFA exception invoked based on the mere allegation of residence." *Nichols*, 718 F. App'x at 739–41 (citing *Dutcher*, 840 F.3d at 1190). Further, "[a]n individual's residence is not equivalent to his domicile and it is domicile that is relevant for determining citizenship." *Id.* (citing *Siloam Springs Hotel, L.L.C. v. Century Sur. Co.*, 781 F.3d 1233, 1238 (10th Cir. 2015)).

This District's analysis in *Dutcher v. Matheson*, 16 F. Supp. 3d 1327, 1333 (D. Utah 2014), is useful to determine the sort of proof UBH must provide to support its citizenship argument. There, the party asserting that a CAFA exception applied failed to present *evidence of citizenship* of members of the class at the time of removal. This Court explained that "[l]ogic dictates that a large percentage of the proposed class, as former owners of real property within the forum, were citizens of the State of Utah," 16 F. Supp. 3d at 1333, but rejected property ownership as an inference for citizenship. This District explained that "a court cannot make a 'leap of faith' and assume that proposed class members are citizens of the forum. [The party claiming a CAFA exception] must come forward with more than just allegations as to the citizenship of the proposed class." *Id.*

Similarly, in *Reece v. AES Corp.*, 638 F. App'x 755 (10th Cir. 2016), the party claiming a CAFA exception "provided an affidavit from an expert who had analyzed property records within

---

[5] UBH mistakenly asserts that "Plaintiffs do not present any satisfactory evidence to establish that at least one-third of the putative class members are citizens of states other than Utah." Mot. at 24. As explained in detail, *supra*, UBH has the burden of proof as the party arguing that a CAFA exception applies.

the class area and had concluded that at least two-thirds of the proposed class members were [state] residents." *Id.* The district court rejected this evidence as insufficient for a CAFA exception, because "the plaintiffs' evidence dealt with residence rather than citizenship." *Id.* at 771. The Tenth Circuit, affirming, found that the expert's affidavit "failed to cure the fundamental defects of the first motion, because it was 'framed in terms of residency, not citizenship.'" *Id.* at 774.

The Tenth Circuit explains that the citizenship inquiry is "an all-things-considered approach" in which "any number of factors might shed light on the subject in any given case." *Middleton v. Stephenson*, 749 F.3d 1197, 1201 (10th Cir. 2014). Relevant factors include: "current residence; voter registration[;] voting practices; situs of personal and real property; location of brokerage and bank accounts; membership in unions, fraternal organizations, churches, clubs, . . . associations; place of employment or business; driver's license[;] automobile registration; payment of taxes; as well as several other aspects of human life and activity." *Lax v. APP of New Mexico ED, PLLC*, No. 22-2057, 2022 WL 2711230, at *4 (10th Cir. July 13, 2022). "Although a person's 'place of residence is *prima facie* the domicile,' something more than residence in a state is required to show the intent to remain in the state." *Id.* (citing *State Farm Mut. Auto. Ins. Co. v. Dyer*, 19 F.3d 514, 520 (10th Cir. 1994)). "[A]llegations of mere 'residence' may not be equated with 'citizenship.'" *Whitelock v. Leatherman*, 460 F.2d 507, 514 (10th Cir. 1972); *see also Lax*, 2022 WL 2711230, at *4.

Here, UBH attempts to buttress its analysis of the proposed Class Members with "citizenship" language, but it relies *solely* on patient mailing addresses and unverified assumptions about Class Members' "intent to remain" in Utah. *See* Mot. at 24-25; Marx Decl. ¶¶ 7-11. For example, while UBH suggests that "approximately 88 percent of the members of the proposed

class are Utah citizens," this claim is based strictly on "review[ing] its records to *identify the addresses* of all 103,974 individuals." *Id.* (emphasis added). Moreover, UBH's assertion that a "continuance of Utah addresses . . . evidence that these individuals are located in Utah with an intent to remain here – and thus are Utah citizens," (Mot. at 25) completely ignores that some of the Class Members were likely treated within days or weeks of the Data Breach, which clearly does not suggest a persuasive pattern of continuity. Moreover, UBH ignores that citizenship and an address are not synonymous.[6] *See, e.g., Lax*, 2022 WL 2711230, at *4. Thus, the "continuance" of patient addresses does not demonstrate an "intent to remain" and certainly does not support a claim of "citizenship," especially given UBH's burden is by a preponderance of the evidence. Finally, UBH's reliance on facts like it being "an independent rural healthcare system" and serving "local people" (Mot. at 25), as well as generic community statistics about Duchesne County property ownership and poverty (Marx Decl. ¶¶ 12, 13), contribute nothing toward accurately establishing the citizenship of any Class Members by a preponderance of the evidence.

In other words, UBH is arguing that this Court should take a "leap of faith" and assume that the proposed Class Members are citizens of Utah based only on addresses. This District has already rejected that tactic. *Dutcher v. Matheson* matter, 16 F. Supp. 3d at 1333. Accordingly, UBH has failed to meet its burden with more than just allegations as to the citizenship of the proposed class based on addresses (*Whitelock*, 460 F.2d at 514) and UBH's motion to dismiss on this basis should be denied.

---

[6] The class includes UBH patients who received healthcare between March 2012 and November 2022. *See* Compl. ¶ 35.

III.     **UBH'S MOTION FOR SUMMARY JUDGMENT SHOULD BE DENIED.**

     **A.   CADA does not "effectively exculpate" UBH from all liability.**

UBH moves for summary judgment because it claims that the Utah Cybersecurity Affirmative Defense Act ("CADA"), Utah Code Ann. § 78B-4-702, *et seq*., "effectively exculpate[d] [UBH] from all liability." Mot. at 2. But "Utah do[es] not require companies to have a written cybersecurity program. Instead, [Utah] provide[s] as an affirmative defense the existence of a cyber program in rebuttal to an argument that [the entity] failed to implement reasonable information security controls, and that failure resulted in a breach." § 5:4. Data protection requirements for general industries, 1 Thomas on Data Breach § 5:4.

As an initial matter, although CADA creates an affirmative defense, it does not provide a "Get Out of Jail Free" card to the person or entity—like UBH—that merely ticks certain boxes through its own employee and expert declarations. *See* ECF No. 32 (Decl. of P. Marx, UBH Vice President of Strategy & Innovation) and ECF No. 33 (Decl. of Dr. B. Hartley, retained UBH expert). The plain language of the statute repeatedly states that it provides a person or entity "an affirmative defense" to certain allegations. *See, e.g.,* § 78B-4-702 (1), (2), and (3). But the statute then adds the caveat that an entity (like UBH) "*may not claim an affirmative defense*" under Subsection (1), (2), or (3) if:

        (i) the person had actual notice of a threat or hazard to the security, confidentiality, or integrity of personal information;

        (ii) the person did not act in a reasonable amount of time to take known remedial efforts to protect the personal information against the threat or hazard; and

        (iii) the threat or hazard resulted in the breach of system security.

Utah Code Ann. § 78B-4-702(5)(a) (emphasis added). Plaintiffs' pleaded facts call in to question the applicability of this section and UBH does not rebut this statutory caveat.

Notably, nowhere in its "Statement of Undisputed Facts" (Mot. at 4-5), or in the two declarations that UBH offers in support of its motion for summary judgment (ECF Nos. 32 and 33), or in its fifteen attached exhibits (ECF Nos. 32-1 to 32-15) does UBH unequivocally state that it *did not have actual notice* of the threat or hazard prior to the breach. Utah Code Ann. § 78B-4-702(5). UBH's failure to provide this key fact in dispute of Plaintiffs' well-pled allegations renders its motion for summary judgment untethered from the statute and precludes the Court from ruling on its affirmative defense under CADA.

### B.  CADA does not define "reasonable compliance."

Although UBH's declarants—one an employee and the other a retained expert—each couch their summaries and opinions of UBH's computer security system in terms of "reasonably complying" and "reasonably conforming" with statutory requirements (*see* ECF Nos. 32 and 33), CADA frequently uses but does not itself define the term "reasonable compliance." *See, e.g.,* §§ 78B-4-701 (definitions), -702 (*see* subsections (1) "A person that creates, maintains, and reasonably complies with a written cybersecurity program . . ."; (2)(a) [same]; (3)(a) [same]; 3(b) [similar]; and (4)(b) "reasonably conforming to a recognized cybersecurity framework . . ."). Unfortunately, given the recency of this affirmative defense statute (first enacted in May 2021), there is no caselaw interpreting the meaning of "reasonable compliance" as related thereto.

As this District has explained in a recent personal injury/insurance case, "[r]easonableness determinations are almost always factually intensive." *Holiday v. Progressive Ins. Co.*, No. 2:21-CV-173-DAK-DBP, 2022 WL 1307874, at *8 (D. Utah May 2, 2022) (as related to the PIP statute,

Utah Code Ann. § 31A-22-307). Similarly, in failure to warn cases, this District has explained that as "the adequacy or reasonableness . . . presents an issue of fact, summary judgment is generally inappropriate." *Figueroa v. United States*, 64 F. Supp. 2d 1125, 1142 (D. Utah 1999) (citing *House v. Armour of America, Inc.*, 929 P.2d 340, 346 (Utah 1996) (affirming denial of summary judgment and recognizing that reasonable minds could reach different results on reasonableness)); *Canfield v. Albertson's, Inc.*, 841 P.2d 1224, 1227 (Utah App.1992) (reversing summary judgment and concluding that the determination of reasonableness "lies within the province of the jury"). Although these cases and their legal underpinnings are admittedly quite different from the CADA statute's affirmative defense, which hinges on whether an entity has "reasonably complied" with its data security plan, this Court should follow the general pattern observed in this District that reasonableness is so factually intensive that summary judgment is inappropriate – especially here, where discovery has not yet begun. *See* Bryan Bleichner Affidavit ("Bleichner Aff."), ¶¶ 4-9.

A "reasonableness" inquiry in this matter must weigh several factors, including prior threats to Plaintiffs' and Class Members' Private Information, statutory, regulatory, and common law duties, contractual and fiduciary duties policy, statements of the UBH, and industry standards. The factual record is nowhere near complete enough for the court to make such a summary judgment determination. *Id.*

### C.  UBH's motion for summary judgment is premature.

In this District, deciding a summary judgment motion before the discovery deadline has run <u>or as in this matter, before discovery has even begun</u> "would effectively prevent the parties from developing the factual record, thereby undermining the court's ability to accurately determine whether there is 'no genuine issue of material fact' on the relevant issues." *Zurich Am. Ins. Co. v.*

*Ascent Constr., Inc.*, No. 1:20-CV-00089-DBB, 2022 WL 280779, at *2 (D. Utah Jan. 31, 2022),

*reconsideration denied*, No. 120CV00089DBBCMR, 2022 WL 4016872 (D. Utah Sept. 2, 2022)

(collecting cases); *see also Redmond, Inc. v. Willow Creek Salt, Inc.,* No. 2:17-cv-943, 2018 WL

1972678, at *2 (D. Utah Apr. 26, 2018) ("Given the state of the case and that discovery has yet to

be conducted, the summary judgment motion is denied as premature to allow discovery with leave

for the parties to file additional motions as deemed appropriate at a later time."); *Magnusson v.*

*Ocwen Loan Serv., LLC,* No. 2:14-cv-00161, 2014 WL 6636735, at *2 (D. Utah Nov. 24, 2014)

("Consistent with the parties' scheduling order and the dates listed above, the court instructs the

parties to engage in discovery prior to the filing of dispositive motions for summary judgment.").[7];

More generally in the Tenth Circuit, denying pre-discovery motions for summary judgment

is common; "[b]ecause the parties have yet to engage in discovery . . . an informed ruling on [a

summary judgment] Motion cannot be had at this time, and 'summary judgment is premature.'"

*Hicks v. Bd. Of Cnty. Commissioners of Cnty. Of Otero*, No. CV 18-850 DHU/JFR, 2022 WL

3279256, at *4 (D.N.M. Aug. 11, 2022); *see also Orizon Aero. LLC v. Crumley,* No. 23-2069-

EFM-KGG, 2023 WL 3002445, at *1–2 (D. Kan. Apr. 19, 2023); *Ackley v. Bartlesville Exam'r-*

*Enter.,* No. 06-CV-529-TCK-PJC, 2007 WL 9782753, at *1–2 (N.D. Okla. May 9, 2007).

---

[7] *See also Enoch v. Dahle/Meyer Imports, LLC,* No. 2:05-cv-409, 2006 WL 547947, at 1 (D. Utah Mar. 6, 2006) ("Although the court acknowledges that Ms. Enoch failed to submit an affidavit in support of her rule 56(f) request with regard to her Equal Credit Opportunity Act claim and failed to move for a 56(f) continuance as to her other claims, the record establishes that some discovery must occur before the allegations in Ms. Enoch's complaint can be properly resolved."); *BM Glob. Grp. USA, LLC v. BSN Med., Inc.,* No. 2:05-cv-821, 2006 WL 3337421, at *2 (D. Utah Nov. 16, 2006) ("The Court finds that there are numerous disputed issues of material fact presented by the parties at this early stage in the litigation, and that summary judgment is premature at this juncture.").

As this District recently explained in the *Zurich American Insurance* case, "simply retaining the current motion and briefing make little sense because the parties will seek to supplement their older briefing with additional briefs depending on the results of discovery. Efficiency and accuracy both are served by starting fresh after the close of discovery." 2022 WL 280779, at *2 n.15. "It is in the interests of justice for the court to defer its ruling on summary judgment until the relevant facts have been developed through the discovery process and the parties have had the opportunity to incorporate these facts into their briefing." *Id.* at *2. This Court should deny UBH's motion for summary judgment without prejudice, rather than deferring a ruling on it. Simply put, UBH's pre-discovery motion for summary judgment is clearly premature.

## IV. PLAINTIFFS' COMPLAINT STATES A CLAIM UPON WHICH RELIEF CAN BE GRANTED IN ITS SECON, FOURTH, FIFTH & SEVENTH CLAIMS.[8]

UBH proceeds to assert that Plaintiffs fail to state a claim on four of their state law claims and seeks dismissal under FED.R.CIV.P. 12(b)(6). Because Plaintiffs have pled these claims sufficiently, dismissal is not warranted.

### A. Plaintiff Has Plausibly Pleaded a Claim for Negligence *Per Se.*

UBH argues that Plaintiffs' negligence *per se* claim fails because 15 U.S.C. § 45 (the FTCA) does not provide a private right of action and that Plaintiffs cannot use UBH's violation of the FTCA to establish the duty and breach elements of their claim. *See* Mot. at 34-35. Although it does not provide a private right of action, the FTCA makes unlawful a merchant's failure to take reasonable measures to protect consumers' sensitive information and thus UBH's violation of Section 5 of the FTCA constitutes negligence *per se*. *See* Compl. ¶¶ 224-36.

---

[8] To the extent the Court dismisses any count further to Rule 12(b)(6), Plaintiffs respectfully request leave of Court to re-plead and file a Second Consolidated Amended Complaint.

Courts throughout the country have employed the standard from the FTCA as a basis for a negligence *per se* claim. *See, e.g.*, *In re Marriott Int'l, Inc., Cust. Data Sec. Breach Litig.*, 440 F. Supp. 3d at 479 (citing *In re Equifax, Inc., Cust. Data Sec. Breach Litig.*, 362 F. Supp. 3d at 1327); *In re Arby's Rest. Grp. Inc. Litig.*, No. 1:17-CV-0514-AT, 2018 WL 2128441, at *14 (N.D. Ga. Mar. 5, 2018); *In re The Home Depot, Inc., Cust. Data Sec. Breach Litig.*, 2016 WL 2897520, at *4 (N.D. Ga. May 17, 2016).[9]

"Section 5 of the FTC Act *is* a statute that creates enforceable duties. Moreover, this duty is ascertainable as it relates to data breach cases based on the text of the statute and a body of precedent interpreting the statute and applying it to the data beach context."  *In re Marriott Int'l, Inc., Cust. Data Sec. Breach Litig.*, 440 F. Supp. 3d at 481.

As one federal court recently found in a data breach context, negligence *per se* "is not a standalone claim but a theory of proof," and therefore if there is another, non-statutory basis for finding negligence, the Court "need not evaluate whether they can alternatively prove the very same claim via a negligence per se theory." *Tate*, 2023 WL 6383467, at *7-8. Similarly, Utah courts accept that the evidence of a statutory violation is strong evidence of negligence, rather than evaluated purely as a separate claim. *See Hansen v. Eyre*, 116 P.3d 290, 293, n.4 (Utah 2005). In *Hansen*, the court noted that:

> Negligence per se, most often resulting from a statutory violation, is defined as '[n]egligence established as a matter of law, so that breach of the duty is not a jury question.'. As we have stated, however, '[t]he violation of a statute does not necessarily constitute

---

[9]  *See also First Choice Fed. Credit Union v. Wendy's Co.*, No. 16-506, 2017 WL 9487086, at *4 (W.D. Pa. Feb. 13, 2017); *Perdue v. Hy-Vee, Inc.*, 455 F. Supp. 3d 749, 760–61 (C.D. Ill. 2020) ("Therefore, the FTC Act can serve as the basis of a negligence *per se* claim."); *In re Capital One Consumer Data Sec. Breach Litig.*, 488 F. Supp. 3d 374, 407 (E.D. Va. 2020).

> negligence per se and may be considered only as evidence of
> negligence.... [The violation] may be regarded as 'prima facie'
> evidence of negligence, but is subject to justification or excuse if the
> evidence is such that it reasonably could be found.

*Id.* (quoting Black's Law Dictionary 1057 (7th ed. 1999); *see also Child v. Gonda,* 972 P.2d 425,

432 (Utah 1998)). Thus, the Court should not dismiss Plaintiffs' claim for negligence *per se* based

on UBH's violation of the FTCA.

### B. Plaintiffs State a Viable Claim for Unjust Enrichment.

In Utah, unjust enrichment, or an implied in law contract, is created where (1) the

"defendant received a benefit; (2) [there is] an appreciation or knowledge by the defendant of the

benefit;" and (3) it would be "unjust for the defendant to retain the benefit without paying for it."

*Davies v. Olson*, 746 P.2d 264, 269 (Utah Ct. App. 1987). It is a judicial remedy designed "to

prevent the defendant's enrichment at the plaintiff's expense." *Id*.

Here, UBH has been unjustly enriched as Plaintiffs unquestionably did not receive

healthcare services *and* appropriately funded data security practices in exchange for the provision

of their valuable Private Information. *See Rudolph v. Hudson's Bay Co.*, No. 18-CV-8472, 2019

WL 2023713, at *12 (S.D.N.Y. May 7, 2019) ("[the plaintiff's] unjust enrichment claim is not

directed to the value of the goods received. Rather, she asserts that the defendants profited from

her purchase but by failing to secure her card data, they did not provide full compensation for the

benefit [the data] provided.") (quotations omitted); *In re Banner Health Data Breach Litig.*, No.

CV-16-02696-PHX-SRB, 2017 WL 6763548, at *6 (D. Ariz. Dec. 20, 2017) (allegations that

"money was supposed to be used for the administrative costs of data security, and that UBH failed

to provide adequate data security . . . are sufficient to support a claim for unjust enrichment.").

UBH proposes that there is insufficient evidence of a failure to provide adequate security, other

than, of course, the Data Breach itself. *See* Mot. at 35-36 (referring to Plaintiffs' claim as a

"conclusory allegation."). At this stage in the proceedings, however, Plaintiffs' allegations are

sufficient.

The recent trend in data breach litigation around the country is to find that "in the context

of PII theft," PII clearly has economic value. *See, e.g.*, *Liston v. King.com, Ltd.*, 254 F. Supp. 3d

989, 997 (N.D. Ill. 2017) (noting the growing trend that PII has inherent value); *In re Marriott*,

440 F. Supp. 3d at 462 (agreeing with "the growing number of courts that have recognized the loss

of this property value in data breach cases"); *accord Klein v. Facebook, Inc.*, 580 F. Supp. 3d 743,

804 (N.D. Cal. 2022) ("[T]here is ample support for Consumers' argument that lost information

and attention has material value."); *Opris v. Sincera Reprod. Med.*, No. CV 21-3072, 2022 WL

1639417, at *8 (E.D. Pa. May 24, 2022); *Charlie v. Rehoboth McKinley Christian Health Care

Servs.*, 598 F. Supp. 3d 1145, 1157 (D.N.M. 2022). And here, UBH did not just retain the value of

Plaintiffs' Private Information—it also retained value derived from Plaintiffs' information in

providing additional services that required Plaintiffs to part with valuable consideration. The

retention of this benefit—which would not have been provided absent an understanding that UBH

would implement and maintain reasonable data security measures—is also unjust. *Compare*

Compl. ¶ 267, *with Sackin v. TransPerfect Glob., Inc.*, 278 F. Supp. 3d 739, 751 (S.D.N.Y. 2017)

("The Complaint adequately alleges . . . that TransPerfect received the benefits of Plaintiffs' labor;

second, that TransPerfect was enriched at Plaintiffs' expense when it chose to cut costs by not

implementing security measures to protect Plaintiffs' PII which UBH required or obtained in the

course of Plaintiffs' employment; and third, that it would be inequitable and unconscionable to

allow TransPerfect to retain the money it saved by shirking data-security, while leaving Plaintiffs

to suffer the consequences."); *see also Bowen*, 2022 WL 4110319, at *8; *In re Wawa, Inc. Data Sec. Litig.*, No. CV 19-6019, 2021 WL 1910887, at *3 (E.D. Pa. May 12, 2021). UBH's motion to dismiss Plaintiffs' unjust enrichment claim should be denied.

### C.  Plaintiffs Plead a Claim for Breach of Confidence.

UBH claims that Utah does not recognize a claim for breach of confidence. *See* Mot. at 36. But UBH ignores the relationship between the confidence reposed in medical professionals and the duty of confidentiality. Plaintiffs have asserted that as "a healthcare provider, Uintah has a special, fiduciary relationship with its patients, including Plaintiffs and Class Members [, and that therefore it] had a duty to maintain such information in confidence." Compl. ¶ 274. This should be a rather uncontroversial statement—surely UBH does not deny that doctor-patient confidentiality is foundational to its relationship with Plaintiffs and Class Members and to the medical profession. *See, e.g.,* Amer. Medical Assoc., AMA Code of Medical Ethics, *https://code-medical-ethics.ama-assn.org/principles* ("A physician shall … safeguard patient confidences and privacy within the constraints of the law."); *see also Sorensen v. Barbuto,* 143 P.3d 295, 300 (Utah Ct. App. 2006) ("As part of a therapeutic relationship, a doctor or therapist has an obligation to protect the confidentiality of his patients that transcends any duty he has as a citizen to voluntarily provide information that might be relevant in pending litigation."); *id.* at 301 ("Therefore, the trial court erred in dismissing Sorensen's claim for breach of confidentiality.").

Whether the duty at issue should best be described as a breach of the fiduciary duty of confidentiality or as a breach of confidence, the point is not the name of the cause of action, but the interests at issue. Plaintiffs plead that UBH had a duty to maintain their information in the strictest confidence and that it failed to do so. Whether referred to as a breach of fiduciary duty or

a breach of confidentiality, Plaintiffs adequately allege an actionable tort in Utah, and UBH's motion should therefore be denied.

**D.  Plaintiffs Plead a Claim for Invasion of Privacy.**

As UBH notes, Utah law recognizes multiple versions of the tort of invasion of privacy. *See* Mot. at 37-38 ("An invasion of privacy claim has evolved into four separate torts."). UBH summarizes Plaintiffs' claim for invasion of privacy as a singular claim for public disclosure of private facts. *Id.* (citing Compl. ¶ 293). In doing so, UBH simply ignores the next several paragraphs, which also allege a claim for intrusion upon seclusion. *See* Compl. ¶ 295 ("Defendant's conduct as alleged above intruded upon Plaintiffs' and Class Members' seclusion under common law."); *id.* ¶ 296 ("Uintah intentionally invaded Plaintiffs' and Class Members' privacy by intentionally and substantially intruding into Plaintiffs' and Class Members' private affairs in a manner that identifies Plaintiffs and Class Members and that would be highly offensive and objectionable to an ordinary person.").

Plaintiffs have pleaded a viable claim for intrusion upon seclusion under Utah law. See *Stien v. Marriott Ownership Resorts, Inc.*, 944 P.2d 374, 378 (Utah Ct. App. 1997) (quoting *Turner v. General Adjustment Bureau, Inc.,* 832 P.2d 62 (Utah. Ct. App. 1992) and Restatement (Second) of Torts § 652B (1977)) ("In order to establish a claim of intrusion upon seclusion, the plaintiff must prove two elements by a preponderance of the evidence: (1) that there was 'an intentional substantial intrusion, physically or otherwise, upon the solitude or seclusion of the complaining party,' and (2) that the intrusion /would be highly offensive to the reasonable person.'")  UBH's motion therefore should be denied.

## **CONCLUSION**

For the reasons set forth herein, Defendant Uintah Basin Healthcare's Motion to Dismiss

and premature motion for summary judgment should be denied.

Respectfully submitted,

Dated: November 30, 2023

*/s/ Bryan L. Bleichner*
Bryan L. Bleichner*
Philip J. Krzeski*
**CHESTNUT CAMBRONNE PA**
100 Washington Avenue South, Suite 1700
Minneapolis, MN 55401
Telephone: (612) 339-7300
Facsimile: (612) 336-2940
*bbleichner@chestnutcambronne.com*
*pkrzeski@chestnutcambronne.com*

Mason A. Barney*
Tyler J. Bean*
**SIRI & GLIMSTAD LLP**
745 Fifth Avenue, Suite 500
New York, New York 10151
Telephone: (212) 532-1091
*mbarney@sirillp.com*
*tbean@sirillp.com*

Danielle L. Perry*
**MASON LLP**
5335 Wisconsin Avenue NW, Suite 640
Washington, DC 20015
Telephone: (202) 429-2290
*dperry@masonllp.com*

*Interim Co-Lead Counsel*

36

David S. Almeida*
Elena A. Belov*
**ALMEIDA LAW GROUP LLC**
849 W. Webster Avenue
Chicago, Illinois 60614
Telephone: (312) 576-3024
*david@almeidalawgroup.com*
*elena@almeidalawgroup.com*

Ashton J. Hyde (A13248)
**YOUNKER HYDE MACFARLANE,
PLLC**
257 East 200 South, Suite 1080
Salt Lake City, UT 84111
Telephone: (801) 335-6467
Facsimile: (801) 335-6478
*ashton@yhmlaw.com*

Josh Sanford*
**SANFORD LAW FIRM, PLLC**
10800 Financial Centre, Pkwy., Ste. 510
Little Rock, Arkansas 72211
Telephone: (501) 787-2040
*josh@sanfordlaw.com*

Jason R. Hull*
**MARSHALL OLSON & HULL PC**
10 EXCHANGE PL STE 350
SALT LAKE CITY, UT 84111
Telephone: (801)456-7655
*jhull@mohtrial.com*

Jennifer F. Parrish*
Yevgen Kovalov*
**MAGLEBY CATAXINOS &
GREENWOOD**
141 W PIERPONT AVE
SALT LAKE CITY, UT 84101
Telephone: (801) 359-9000
Facsimile: (801) 359-9011
*parrish@mcgiplaw.com*
*kovalov@mcgiplaw.com*

*Admitted *Pro Hac Vice*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 30th day of November 2023, I caused to be served, via the Electronic Court Filing system (ECF) for the United States District Court for the District of Utah, a true and correct copy of **Plaintiffs' Opposition to Defendant's Motion to Dismiss Plaintiff's Complaint Under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), or in the Alternative, Summary Judgment Under Rule 56** upon all counsel of record via the Court's ECF system.

/s/ *Bryan L. Bleichner*
Bryan L. Bleichner

t