Blaine J. Benard (#5661)
Brent E. Johnson (#7558)
Engels J. Tejeda (#11427)
Emily T. Howe (#18294)
HOLLAND & HART LLP
222 South Main Street, Suite 2200
Salt Lake City, UT 84101-2194
Telephone: 801.799.5800
bjbenard@hollandhart.com
bjohnson@hollandhart.com
ejtejeda@hollandhart.com
ethowe@hollandhart.com

*Attorneys for Defendant Uintah Basin Healthcare*

## IN THE UNITED STATES DISTRICT COURT,
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| JASON RASMUSSEN et al., on behalf of themselves and all others similarly situated,<br><br>        Plaintiffs,<br><br>vs.<br><br>UINTAH BASIN HEALTHCARE, a Utah non-profit corporation,<br><br>        Defendant. | **DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' COMPLAINT UNDER FEDERAL RULES OF CIVIL PROCEDURE 12(b)(1) AND 12(b)(6), OR IN THE ALTERNATIVE, SUMMARY JUDGMENT UNDER RULE 56**<br><br>Case No. 2:23-cv-00322-HCN-DBP<br><br>District Judge Howard C. Nielson, Jr.<br>Chief Magistrate Judge Dustin B. Pead |

# <u>TABLE OF CONTENTS</u>

<u>**Page No(s).**</u>

TABLE OF AUTHORITIES ...................................................................................... iii

I.    DISMISSAL IS WARRANTED UNDER RULE 12(b)(1) BECAUSE
PLAINTIFFS STILL FAIL TO ESTABLISH ARTICLE III STANDING ...................... 1

    A.    Plaintiffs Have Not Shown They Suffered Any Injury In Fact. ............................. 2

        1.    Future Damages. ........................................................................ 2

        2.    Plaintiffs' Alleged Mitigation Costs Fail To Establish Standing ................ 4

        3.    Unauthorized Charges ................................................................ 6

        4.    Plaintiffs' Allegations Of Fear, Anxiety, Annoyance,
Inconvenience, And Nuisance Do Not Come Close To Establish
Standing. ................................................................................ 7

        5.    Loss Of Privacy And Diminution In Value Of Private Information ............ 8

        6.    Loss Of The Benefit Of The Bargain ............................................... 9

        7.    Increase In Spam ..................................................................... 10

    B.    Plaintiffs Injuries, If Any, Are Not Traceable To UBH. ....................................... 11

    C.    Plaintiffs Lack Standing Because Their Injuries Are Not Redressable. ................. 12

II.    DISMISSAL IS WARRANTED UNDER RULE 12(b)(1) BECAUSE THE
COURT MUST DECLINE JURISDICTION UNDER CAFA ......................................... 13

III.    IN THE ALTERNATIVE, UNDER CADA, UBH IS ENTITLED TO
JUDGMENT ON THE COMPLAINT IN WHOLE .................................................... 16

    A.    A Motion For Summary Judgment Is Not Premature. ......................................... 17

    B.    Subsection 702(5) Does Not Preclude Judgment In UBH's Favor ......................... 18

    C.    UBH Reasonably Complied f WISP ................................................................. 19

IV.     IN THE ALTERNATIVE, THE COMPLAINT FAILS TO STATE A CLAIM
        UPON WHICH RELIEF CAN BE GRANTED.................................................................20

CONCLUSION.........................................................................................................................24

**TABLE OF AUTHORITIES**

**Page No(s).**

**CASES**

*Adams v. C3 Pipeline Constr. Inc.*,
   30 F.4th 943 (10th Cir. 2021) ...................................................................................17

*Aponte v. Ne. Radiology, P.C.*,
   No. 21-cv-5883, 2022 U.S. Dist. LEXIS 87982 (S.D.N.Y. May 16, 2022) ..............................2

*Barker v. Manti Tel. Co.*,
   No. 2:06-cv-00812, 2009 U.S. Dist. LEXIS 819 (D. Utah Jan. 6, 2009) ...............................23

*Bishop v. Smith*,
   760 F.3d 1070 (10th Cir. 2014) .....................................................................................1

*Brickman v. Maximus, Inc.*,
   No. 2:21-cv-3822, 2022 U.S. Dist. LEXIS 205627, at *6, 9 (S.D. Ohio May 2,
   2022) .........................................................................................................................2

*Butler v. Daimler Trucks N. Am., LLC*,
   74 F.4th 1131 (10th Cir. 2023) .....................................................................................16

*C.C. v. Med-Data Inc.*,
   No. 21-2301, 2022 U.S. Dist. LEXIS 60555 (D. Kan. Mar. 31, 2022) ...........................9, 10

*Child v. Gonda*,
   972 P.2d 425 (Utah Sup. Ct. 1998)................................................................................21

*Clapper v. Amnesty Int'l USA*,
   568 U.S. 398 (2013)...................................................................................................3, 5

*Cummings v. United States Postal Serv.*,
   No. 20-7066, 2021 U.S. App. LEXIS 29996 (10th Cir. Oct. 6, 2021) ..................................18

*Dieffenbach v. Barnes & Noble, Inc.*,
   887 F.3d 826 (7th Cir. 2018) ..........................................................................................5

*Dutcher v. Matheson*,
   16 F. Supp. 3d 1327 (D. Utah 2014)...............................................................................15

*Engl v. Natural Grocers by Vitamin Cottage, Inc.*,
   2016 U.S. Dist. LEXIS 187733 (D. Colo. Sep. 21, 2016) ...............................................6, 7

iii

*Farmer v. Humana, Inc.*,
    582 F. Supp. 3d 1176 (M.D. Fla. 2022) ................................................................22

*Faustin v. City & Cty. of Denver*,
    423 F.3d 1192 (10th Cir. 2005) ..........................................................................20

*Feins v. Goldwater Bank NA*,
    No. cv-22-00932, 2022 U.S. Dist. LEXIS 222406 (D. Ariz. Dec. 9, 2022) ..........................23

*Gaddy v. Long & Foster Co.*,
    Civil Action No. 21-2396, 2023 U.S. Dist. LEXIS 22935 (D.N.J. Feb. 10,
    2023) ................................................................................................................6

*Galaria v. Nationwide Mut. Ins. Co.*,
    663 F. App'x 384, 385 (6th Cir. 2016) ..............................................................2, 3

*Griffey v. Magellan Health Inc.*,
    562 F. Supp. 3d 34 (D. Ariz. 2021) ......................................................................4

*Habecker v. Town of Estes Park*,
    518 F.3d 1217 (10th Cir. 2008) ......................................................................11, 12

*In re 21st Century Oncology Customer Data Sec. Breach Litig.*,
    380 F. Supp. 3d 1243 (M.D. Fla. 2019) ................................................................5

*In re Am. Med. Collection Agency Customer Data Sec. Breach Litig.*,
    Civil Action No. 19-md-2904, 2021 U.S. Dist. LEXIS 240360 (D.N.J. Dec.
    16, 2021) ......................................................................................................8, 21

*In re Marriott Int'l, Inc.*,
    440 F. Supp. 3d 447 (D. Md. 2020) ..................................................................8, 21

*Kilgore v. Easterseals-Goodwill N. Rocky Mt., Inc.*,
    No. 2:22-cv-728, 2023 U.S. Dist. LEXIS 124770 (D. Utah July 18, 2023) ..............................1

*Lax v. APP of N.M. ED, PLLC*,
    Nos. 22-2057, 22-2058, 2022 U.S. App. LEXIS 19279 (10th Cir. July 13,
    2022) ..........................................................................................................14, 15

*Legg v. Leaders Life Ins. Co.*,
    574 F. Supp. 3d 985 (W.D. Okla. 2021) ..............................................................3, 9

*Masterson v. IMA Fin. Grp., Inc.*,
    No. 2:23-cv-02223, 2023 U.S. Dist. LEXIS 222701 (D. Kan. Dec. 14, 2023) ..........3, 7, 8, 11

*McCollin v. United States Army Corps of Eng'rs*,
No. 2:12-cv-1022, 2013 U.S. Dist. LEXIS 175432 (D. Utah Dec. 11, 2013) .........................14

*McCombs v. Delta Grp. Elecs., Inc.*,
No. 1:22-cv-00662-MLG-KK, 2023 U.S. Dist. LEXIS 100632 (D.N.M. June
9, 2023) .................................................................................................................... *passim*

*McMorris v. Carlos Lopez & Assocs., LLC*,
995 F.3d 295 (2d Cir. 2021)...........................................................................................2, 3

*Miller v. Gastronomy, Inc.*,
2005 UT App 80, 110 P.3d 144 ..........................................................................................21

*N.Y. Life Ins. Co. v. K N Energy*,
80 F.3d 405 (10th Cir. 1996) ..............................................................................................20

*Nichols v. Chesapeake Operating, LLC*,
718 F. App'x 736 (10th Cir. 2018) .....................................................................................14

*Pica v. Delta Air Lines, Inc.*,
2018 U.S. Dist. LEXIS 220836, *25 (C.D. Cal. Sep. 18, 2018)..........................................20

*Reece v. AES Corp.*,
638 F. App'x 755 (10th Cir. 2016) .....................................................................................15

*Rider v. Uphold HQ Inc.*,
No. 22-cv-1602, 2023 U.S. Dist. LEXIS 29617 (S.D.N.Y. Feb. 22, 2023)...........................20

*Shiyang Huang v. Equifax Inc. (In re Equifax Customer Data Sec. Breach Litig.)*,
999 F.3d 1247 (11th Cir. 2021) ............................................................................................5

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016)...........................................................................................................1, 4

*Stien v. Marriott Ownership Resorts*,
944 P.2d 374 (Utah Ct. App. 1997) ....................................................................................22

*Teeter v. Easterseals-Goodwill N. Rocky Mt., Inc.*,
No. CV-22-96, 2023 U.S. Dist. LEXIS 35347 (D. Mont. Mar. 2, 2023) .......................1, 9, 21

*TransUnion LLC v Ramirez*,
141 S. Ct. 2190 (2021)................................................................................................2, 3, 4, 8

<u>STATUTES</u>

28 U.S.C. § 1332(d)(2)(A) ..................................................................................13

Utah Code Ann. §§ 78B-4-702(1)-(3) ...............................................................19

Utah Code Ann. §§ 78B-4-702(4)(a)-(c) ...........................................................16

Utah Code Ann. § 78B-4-702(5)(a) ...................................................................18

Utah Cybersecurity Affirmative Defense Act...............................................1, 19

<u>OTHER AUTHORITIES</u>

Fed. R. Civ. P. 7(b) ...........................................................................................23

Fed. R. Civ. P. 12(b)(1)..............................................................................1, 2, 13

Fed. R. Civ. P. 12(b)(6)...............................................................................20, 23

Fed. R. Civ. P. 56 ..............................................................................................17

Fed. R. Civ. P. 56(c) ..........................................................................................16

Fed. R Civ. P. 56(c)(1) .......................................................................................18

Fed. R. Civ. P. 56(d) ..........................................................................................17

Fed. R. Civ. P. 56(e)(2).......................................................................................16

Fed. R. Civ. P. 56(f).....................................................................................17, 19

United States Constitution Article III .................................................... *passim*

Plaintiffs' Opposition (the "Opposition") [Dkt. 41] to Defendant's Motion to Dismiss [Dkt. 31] fails to show that Plaintiffs have established subject matter jurisdiction or stated a claim upon which relief can be granted. Moreover, the Opposition fails to raise a triable dispute of material precluding summary judgment because at the time of the data breach alleged in the Complaint, Uintah Basin Healthcare ("UBH") was reasonably complying with a written cybersecurity program under the Utah Cybersecurity Affirmative Defense Act ("CADA").

## I.   DISMISSAL IS WARRANTED UNDER RULE 12(b)(1) BECAUSE PLAINTIFFS STILL FAIL TO ESTABLISH ARTICLE III STANDING

In the Opposition, Plaintiffs ask this Court to disregard the weight of authority, including opinions from district courts within the Tenth Circuit, holding that the mere existence of a data breach does not establish standing under Article III of the United States Constitution. *See e.g., Kilgore v. Easterseals-Goodwill N. Rocky Mt., Inc.*, No. 2:22-cv-728, 2023 U.S. Dist. LEXIS 124770, at *10-11 (D. Utah July 18, 2023) ("Plaintiffs have thus far failed to satisfy their burden to demonstrate an injury-in-fact that is fairly traceable to the Data Breach for purposes of Article III standing"); *Teeter v. Easterseals-Goodwill N. Rocky Mt., Inc.*, No. CV-22-96, 2023 U.S. Dist. LEXIS 35347, at *6 (D. Mont. Mar. 2, 2023) (citing *TransUnion LLC v Ramirez*, 141 S. Ct. 2190, 2210-11 (2021) ("[t]he mere occurrence of a data breach does not suffice to establish liability" and "mere misappropriation of personal information similarly fails to establish injury"). But the Opposition fails to show that Plaintiffs' Complaint "clearly . . . allege[s] facts demonstrating each element" of standing– injury in fact, traceability, or redressability– *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016), for "each plaintiff" and  for each form of relief sought "in each claim," *Bishop v. Smith*, 760 F.3d 1070, 1088 (10th Cir. 2014).

A.      **Plaintiffs Have Not Shown They Suffered Any Injury In Fact.**

Plaintiffs' reliance on out-of-circuit string cites does not save their Complaint from
dismissal under Rule 12(b)(1) because none of their seven theories of damages constitutes an
injury in fact for purposes of meeting their burden to show Article III standing.

1.      **Future Damages.**

Contrary to the Opposition, Plaintiffs' allegation that it may incur future harm because of
the Incident is unavailing for three reasons.

First, Plaintiffs attempt to distinguish *McCombs* by claiming that the plaintiff in that case
did not sufficiently plead "any actual misuse" of the allegedly compromised information. Opp'n
at 17. But the alleged misuses in *McCombs* are nearly identical to those alleged in Plaintiffs'
Complaint. Like *McCombs*, Plaintiffs here attempt to establish actual misuse in two forms:
alleged unauthorized attempts to access financial accounts and increase in spam. *See McCombs
v. Delta Grp. Elecs., Inc.*, No. 1:22-cv-00662-MLG-KK, 2023 U.S. Dist. LEXIS 100632, at *16
(D.N.M. June 9, 2023); Compl. ¶¶ 114, 127, 152, 153, 179. And just as the plaintiff in *McCombs*
failed to satisfy standing, so too do Plaintiffs here.

Second, Plaintiffs' reliance on *McMorris* and *Galaria* is misplaced because courts have
correctly questioned the validity of those opinions after the *TransUnion* decision. *See Aponte v.
Ne. Radiology, P.C.*, No. 21-cv-5883, 2022 U.S. Dist. LEXIS 87982, at *7-8 (S.D.N.Y. May 16,
2022) ("It is unclear whether [the *McMorris* three-part] analysis is still good law following
[*TransUnion*]" (citing *McMorris v. Carlos Lopez & Assocs., LLC*, 995 F.3d 295 (2d Cir. 2021));
*see also*, *Brickman v. Maximus, Inc*., No. 2:21-cv-3822, 2022 U.S. Dist. LEXIS 205627, at *6, 9
(S.D. Ohio May 2, 2022) (noting *TransUnion* "casts some doubt on the continued viability of

2

*Galaria"* and that "much of the language in *TransUnion* suggests that *Galaria's* finding of an injury-in-fact based on a risk of future harm caused by a data breach may no longer be valid" (citing *Galaria v. Nationwide Mut. Ins. Co.*, 663 F. App'x 384, 385 (6th Cir. 2016))).

Third, even if *McMorris* and *Galaria* were persuasive, they do not help Plaintiffs because as threshold matter, a threatened injury "must be *certainly impending* to constitute injury in fact." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (internal quotation marks omitted) (emphasis in original).[1] "Certainly impending" is a standard higher than both a "possible future injury," *Clapper*, 568 U.S. at 409, and an "objectively reasonable likelihood," *Legg v. Leaders Life Ins. Co.*, 574 F. Supp. 3d 985, 992 (W.D. Okla. 2021). Here, Plaintiff only vaguely allege possible future harm – not certainly impending injury. *See* Opp'n at 17. For example, aside from passing, conclusory references, only one Plaintiff (Hyatt) actually pleads that she purportedly found her information on the Dark Web. Compl. ¶ 127.[2] But even if true, that allegation would not establish a "certainly impending" threatened injury. According to Plaintiffs' own allegations, the information of millions of cyberattack victims is found on the Dark Web, and thus its inclusion of one of the Plaintiffs' data is not only unsurprising, but is also insufficient for

---

[1]  The potential "circuit split" as to whether a risk of future injury creates standing in data breach cases is irrelevant here. *See Masterson v. IMA Fin. Grp., Inc.*, No. 2:23-cv-02223, 2023 U.S. Dist. LEXIS 222701, at *21-22 (D. Kan. Dec. 14, 2023) (noting circuit split). While the Tenth Circuit has not weighed in on this issue, virtually every district court within the Tenth Circuit has sided with the majority of courts in holding that the threat of future injury alone does not establish standing under Article III. Moreover, Plaintiffs simply have not plead a "certainly impending" harm. *Clapper*, 568 U.S. at 409; *TransUnion LLC*, 141 S. Ct. at 2210.

[2]  As discussed below, even it true, Hyatt's purported discovery of her information in the Dark Web would not establish an actionable injury for purposes of standing for the separate reason that it is not traceable to the Incident.

purposes of establishing Article III standing.[3] Plaintiffs must allege more to show that the potential exposure of their data will represent a "certainly impeding" threat of actual injury.

In short, even more than a year after the Incident, Plaintiffs have not alleged a single incident of actual harm resulting from the Incident – despite purporting to represent over 100,000 potential class members and having ample opportunity to amend the Complaint. Consequently, Plaintiffs' allegations of future harms do not qualify as injuries in fact under the "certainly impeding" standard.[4]

### 2.    Plaintiffs' Alleged Mitigation Costs Fail To Establish Standing.

The Court should decline Plaintiffs' invitation to go where no other court has gone within the Tenth Circuit and find standing based on Plaintiffs' alleged mitigation costs, including researching the data breach, monitoring bank accounts and credit reports, and changing passwords – all based upon Plaintiffs' own speculative concerns. *See* Opp'n at 10. The Court should decline Plaintiffs' invitation for three reasons.

---

[3]  Nor can Plaintiffs show a "certainly impending" threatened injury by simply pointing to the prior breach. *See Griffey v. Magellan Health Inc.*, 562 F. Supp. 3d 34, 50 (D. Ariz. 2021) ("[T]he existence of an adequate data security infrastructure and two data breaches in the same year are not mutually exclusive.") If Plaintiffs' speculative fears of future identify theft establish standing, then any plaintiff could satisfy the requirement by doing nothing more than claiming there was a data breach and their PII remains with the defendant.

[4]  *Spokeo* does not change this analysis or standard. *See* Opp'n at 16. Notably, *Spokeo* only confirms that "intangible injuries" can be concrete. *Spokeo*, 578 U.S. at 340 (citing as examples, a case involving free speech and a case involving free exercise). *Spokeo* does not hold a threat of future injury, which is not certainly impending, qualifies as a concrete injury. Moreover, even if Plaintiffs' allegations of future harm were certainly impending, those harms only constitute an injury in fact for injunctive relief. *TransUnion*, 141 S. Ct. at 2210. The risk of future harm "on its own does not support Article III standing" for damages claims. *Id*. at 2213.

First, such a finding would result in the exact harm the Supreme Court warned against in *Clapper* – that "an enterprising plaintiff" could "manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending." *Clapper*, 568 U.S. at 416.

Second, Plaintiffs do not attempt to distinguish the cases cited by UBH, which aside from following Supreme Court precedent, also are recent opinions from district courts within the Tenth Circuit and are analogous to the case at bar. For example, in *McCombs*, just like the Plaintiffs here, the claimant alleged unauthorized attempts to access her bank account, increases in spam, diminution in value of PII, lost time and annoyance, and out of pocket expenses. *McCombs*, 2023 U.S. Dist. LEXIS 100632, at *14, 16. The Court rejected mitigation injuries, such as time spent monitoring accounts and verifying the legitimacy of the breach, as basis for standing because they were not "a defense against a concrete or imminent threat," but rather "manufactured harm." *Id.* *15-16

Third, the cases Plaintiffs cite purportedly in support of their argument are from outside the Tenth Circuit and are distinguishable. These opinions either require a finding that the risk of future harm be certainly impending before considering mitigation damages*, Shiyang Huang v. Equifax Inc. (In re Equifax Customer Data Sec. Breach Litig.)*, 999 F.3d 1247, 1262-63 (11th Cir. 2021); are procedurally distinct and do not directly rule on standing, *Dieffenbach v. Barnes & Noble, Inc*., 887 F.3d 826, 828 (7th Cir. 2018) (vacating a dismissal and discussing whether injuries qualify as damages, and rely in part upon, a prior court's finding that there was standing); or are factually distinguishable, *In re 21st Century Oncology Customer Data Sec. Breach Litig*., 380 F. Supp. 3d 1243, 1255-56 (M.D. Fla. 2019) (noting an FBI informant

purchased a sample of the data at issue on the dark web and unauthorized individuals made fraudulent purchases on plaintiffs credit cards, attempted to open credit cards in plaintiffs names, fraudulently wired funds from their bank accounts, and one plaintiff alleged his health insurance was cancelled because his social security number was compromised).[5]

In short, even if true, Plaintiffs' manufactured harm is not based on any concrete or imminent threat. Just as the District of New Mexico recently held in *McCombs*, Plaintiffs' mitigation efforts are not an injury in fact.

### 3. Unauthorized Charges.

Plaintiffs' reliance on *Gaddy* for the proposition that alleged unauthorized charges for which plaintiffs are not responsible nevertheless constitute actionable harm is also unavailing. *See* Opp' at 11 (citing *Gaddy v. Long & Foster Co.*, Civil Action No. 21-2396, 2023 U.S. Dist. LEXIS 22935, at *1 (D.N.J. Feb. 10, 2023)). Like the vast number of opinions cited in the Opposition, *Gaddy* is not binding and courts within the Tenth Circuit have universally followed the majority of courts holding that reimbursed, unauthorized charges are not actionable for purposes of standing. *See e.g., Engl v. Natural Grocers by Vitamin Cottage, Inc.*, 2016 U.S. Dist.

---

[5] To be sure, alleged mitigation efforts related to purported unauthorized charges to Plaintiff Halton's and Miller's accounts do not put this case closer to the opinions that Plaintiffs cite or further from those that UBH invokes. Instead, these allegations are a red hearing at most. Despite claiming otherwise in the Opposition, there is no allegation in the Complaint that Plaintiffs Halton and Miller undertook mitigation efforts *because* of the charges. *See* Opp'n at 10; Compl. ¶¶ 113, 114, 151, 152. Nor does the Complaint include any time frame of when Plaintiffs undertook their alleged mitigating activity. *See id.* In fact, the failed charge to Plaintiff Miller's account occurred in "late June or early July," nearly two months after Miller received the notice from UBH. *Id.* ¶¶ 3, 1525, 177. Moreover, as discussed below, as a matter of law, unauthorized credit card charges that are reimbursed by the credit card companies do not constitute actionable injury for purposes of standing.

LEXIS 187733 at 4 (D. Colo. Sep. 21, 2016) (affirming magistrate judge's conclusion that putative class representative "had not alleged any <u>actual</u> injuries or losses he suffered as a result of the data breach, insofar as he was never held responsible for fraudulent charges made on his Visa credit card and was deprived of the use of that card for a *de minimis* amount of time").[6]

Here, like in *Engl*, Plaintiffs Halton and Miller have not and cannot allege they were held liable for the alleged improper charges. *See* Compl. ¶¶ 114, 152. In fact, Plaintiff Halton admits that the unauthorized charge failed to process, and as discussed below, neither Plaintiff has nor can allege that the charges were traceable to the Incident because UBH does not retain payment card information in its system. Thus, like *Engl*, Plaintiffs' "unauthorized charges" theory fails for purposes of establishing standing.

### 4.   Plaintiffs' Allegations Of Fear, Anxiety, Annoyance, Inconvenience, And Nuisance Do Not Come Close To Establish Standing.

Plaintiffs' claim of emotional injuries, in their totality, is a single conclusory allegation that due to the "risk of harm and loss of privacy," Plaintiffs "suffer fear, anxiety, annoyance, inconvenience, and nuisance." Compl. ¶¶ 118, 131, 157, 169, 183. Beyond the fact that, again, the risk of future harm is not certainly impending, the allegations of these emotional injuries on their own fail to satisfy Plaintiffs' burden of injury in fact.

The District of Kansas recently held plaintiffs claim of emotional damage failed to establish an injury where they "plead no facts supporting [the] conclusory statement." *Masterson*

---

[6] As here, where there are allegations of fraudulent activity with no associated monetary loss, such claims do not satisfy standing. *Ables v. Brooks Bros. Grp., Inc.*, No. CV 17-4309, 2018 U.S. Dist. LEXIS 154681, at *8-14 (C.D. Cal. June 7, 2018); *see also Green v. eBay Inc.*, No. 14-1688, 2015 U.S. Dist. LEXIS 58047, at *13 (E.D. La. May 4, 2015). Plaintiffs Halton and Miller's allegations of unauthorized charges do not establish an injury in fact.

*v. IMA Fin. Grp., Inc.*, No. 2:23-cv-02223, 2023 U.S. Dist. LEXIS 222701, at *17-18 (D. Kan. Dec. 14, 2023) (noting "plaintiffs' bare-bones allegations of emotional distress" alone "are not sufficient to confer standing"). Here too, Plaintiffs bare bones allegations of emotional distress cannot on their own establish standing.[7]

### 5. Loss Of Privacy And Diminution In Value Of Private Information.

Plaintiffs base their entire injury as to loss of privacy and diminution in value of private information on the allegations that (1) their PII is "lucrative" and (2) there are "various markets for their PII" such as the black market. Opp'n at 13. Plaintiffs do not claim they intended to sell their PII, only that now due to the Incident, "any opportunity" Plaintiffs "would cognizably have" to sell their PII is foregone. *Id.*

Again, courts within the Tenth Circuit have found these argument unpersuasive. The District of Kansas recently reaffirmed that "[d]iminution in the value of Plaintiffs' PII and PHI is not a concrete and particularized injury sufficient to confer standing." *Masterson*, 2023 U.S. Dist. LEXIS 222701, at *19 (dismissing complaint for lack of subject matter jurisdiction).[8] If a

---

[7] Plaintiffs' citation to *TranUnion* offers them no reprieve. *See* Opp'n at 12. The portion cited by Plaintiffs is dicta. *TransUnion* did not hold that, as a matter of law, allegations of emotional injury satisfy Article III standing. Rather, the Court stated, "We take no position on whether or how such an emotional or psychological harm could suffice for Article III purposes—for example, by analogy to the tort of intentional infliction of emotional distress." *TransUnion LLC*, 141 S. Ct. at 2211 n.7.

[8] *In re Marriott*, cited by Plaintiffs, like other courts adopting this theory of injury, involved circumstances where the PII "was itself monetized and used for commercial purposes." *In re Am. Med. Collection Agency Customer Data Sec. Breach Litig.*, Civil Action No. 19-md-2904, 2021 U.S. Dist. LEXIS 240360, at *47 (D.N.J. Dec. 16, 2021) (citing *In re Marriott Int'l, Inc.*, 440 F. Supp. 3d 447 (D. Md. 2020)). There, plaintiffs alleged Marriott collected PII "to better target customers and increase its profits and pa[id] a customer analytics company to analyze personal information for this purpose." *Id.* (internal quotation marks omitted). The Complaint here

plaintiff could satisfy an injury in fact by alleging their PII is valuable and that there exists a

black market to sell such information—any person subject to nearly any data breach could

establish standing. And that is simply not the law. *See Teeter,* 2023 U.S. Dist. LEXIS 35347, at

*6-7 ("The mere occurrence of a data breach does not suffice to establish liability."). The

conclusory allegation that Plaintiffs' PII is valuable, and the existence of a black market do not

establish an injury in fact.

### 6.      Loss Of The Benefit Of The Bargain.

Plaintiffs Halton and Jason and Mindy Rasmussen's conclusory allegations that they

overpaid for services that were intended to be accompanied by adequate security but were not,

fail to establish injury. Compl. ¶¶ 121, 172, 186.[9]

Although the Tenth Circuit has not opined on the benefit of the bargain theory, another

court in this Circuit noted "[s]everal cases have rejected [an overpayment] theory." *C.C. v. Med-*

*Data Inc.*, No. 21-2301, 2022 U.S. Dist. LEXIS 60555, at *23 (D. Kan. Mar. 31, 2022). And

predicted "[the Tenth] Circuit would join those results" because the allegations are

"simply too thin to confer standing." *Id.* Although Plaintiffs claim they "reasonably expected

UBH, as their healthcare provider, to protect their Private Information," Opp'n at 15, they do not

establish they "paid any sort of premium in exchange for data security or that the data breach

---

contained so similar allegation. "Absent such circumstances, there is no loss of value in the
information sufficient to state a concrete injury." *Id.*

[9]  The remaining Plaintiffs did not make such allegation, Plaintiff Hyatt only alleged that she lost
the benefit of the bargain but did not claim any overpayment for services, and Plaintiff Keasler
on behalf of A.K. alleged she lost the benefit of the bargain, not A.K. Compl. ¶¶ 127, 146.

diminished the value of the [medical services they] received in return," *Legg*, 574 F. Supp. 3d at 995 (finding plaintiff lacked standing to pursue claims). This injury thus fails to satisfy standing.

Lastly, even if these select Plaintiffs had established privacy was part of their bargained for medical services, this purported injury still fails because Plaintiffs have not established any concrete harm from the Incident. *See C.C.*, 2022 U.S. Dist. LEXIS 60555, at *24-25. Thus, plaintiffs "received exactly what [they] paid for," medical services and data security. *Id.* at *25.

### 7.      Increase In Spam

Plaintiffs do not distinguish the cases cited by UBH. Nor do Plaintiffs cite a single case within the Tenth Circuit that holds an increase in spam can serve as a concrete injury. Courts within this Circuit recognize that spam communications are "very common in this digitized world" and that "a number of courts have declined to confer standing when considering an increase in spam communications." *McCombs*, 2023 U.S. Dist. LEXIS 100632, at *18.[10]

Further, as in *McCombs*, Plaintiffs do not allege their contact information (phone number or email address) were included in the data breach or have any reason to presume that such information was disclosed. *See id.* at *19; Compl. ¶ 6. The three Plaintiffs' increase in spam does not satisfy an injury in fact.

In sum, nothing in the Opposition supports a departure from the reasoning of the majority of courts, including virtually all within the Tenth Circuit, that the potential exposure of Plaintiffs' PII alone constitute actionable harm for purposes of establishing Article III standing.

---

[10] *See also Legg*, 574 F. Supp. 3d at 993 (finding allegations of "a dramatic increase in the amount and frequency of phishing emails," while maybe consistent with data misuse, "does not plausibly suggest that any actual misuse of [p]laintiff's personal identifying information has occurred").

**B.      Plaintiffs Injuries, If Any, Are Not Traceable To UBH.**

Plaintiffs claim they satisfy traceability because they alleged the Incident occurred because of UBH's conduct. But the only allegation that Plaintiffs use to link their injuries to the Incident is that at some undisclosed time after the Incident, two of the six named Plaintiffs experienced attempted unauthorized charges[11] and three of the named plaintiffs saw an increase in spam. While "proximate causation" is not required, Article III standing does require "proof of a substantial likelihood" that defendant's conduct caused plaintiff's injury in fact. *Habecker v. Town of Estes Park*, 518 F.3d 1217, 1225 (10th Cir. 2008). There is no substantial likelihood here.

First, the Complaint does not allege the Incident involved bank or credit card information nor telephone or email addresses. *See* Compl. ¶ 6; Ex. 1 to Mot. The only link then between the Incident and the claimed misuse is that the misuse came after the data breach. Such temporal arguments do not create a "substantial likelihood" that the data breach caused the misuse. *See Masterson*, 2023 U.S. Dist. LEXIS 222701, at *10-11. Plaintiffs fail to address how a court can determine the harm is traceable to UBH when the injuries (to the extent they qualify as injuries) depend on the "independent action of some third party not before the court." *Habecker,* 518 F.3d at 1225.

Second, Plaintiff Miller does not allege that the charge was on an account that is any way linked to UBH or that he ever used at UBH. *See id.* ¶ 152. Plaintiff Halton alleges the charges were on a card that that she used at UBH, but does not indicate that she used the debit card at

---

[11]  And only one Plaintiff alleges the charges were on a card previously used at UBH.

UBH during the period relevant to the Incident. *Id.* ¶ 114. Most importantly, no Plaintiff alleges

UBH kept financial information, such as bank accounts or credit cards, or that such information

was part of the breach. *See id.* ¶ 6 ("The data included, but is not limited to, names, Social

Security numbers, dates of birth, medical treatment information, and health insurance

information that Uintah collected and maintained from patients" during the relevant time period).

In fact, it is not genuinely disputed that UBH does not retain patient payment card data on its

system, rendering Plaintiffs' injury allegations moot. *See* Declaration of Preston Marx ("Marx

Decl.") ¶ 39 [Dkt. 32].

      Third, Plaintiffs have not and cannot link their alleged increase in spam to the Incident.

To the extent Plaintiffs purport to link their vague allegations about the Dark Web to the increase

in spam, UBH retained independent experts who conducted a search of the Dark Web and found

that of the Plaintiffs whose information is on the Dark Web, all exposures are linked to *different

data breaches*, not the Incident. *See* January 2024 Declaration of Dr. Bruce Hartley, filed

herewith, ¶¶ 12-20. But even if causally connected, the alleged increase in spam is not an

actionable injury. *See McCombs*, 2023 U.S. Dist. LEXIS 100632, at *18-19 (collecting cases

finding unsolicited spam insufficient to constitute an injury in fact).

      In short, Plaintiffs have not pled actual injuries that are traceable to the alleged Incident

for purposes of meeting their burden of showing Article III standing.

      **C.**    **Plaintiffs Lack Standing Because Their Injuries Are Not Redressable.**

      Plaintiffs do not establish that it is "likely, as opposed to merely speculative," that their

injuries are redressable. *Habecker*, 518 F.3d at 1224 (internal quotation marks omitted).

Plaintiffs claim they are redressable because they seek an order requiring UBH to provide

lifetime credit monitoring and identity theft insurance. Opp'n at 19. But, even if the Court grants Plaintiffs that order, it does nothing for the alleged injuries of increase in spam, diminution in value of PII, and prior alleged unauthorized charges (for which Plaintiffs do not allege they were financially responsible). Plaintiffs then note they seek an injunction, requiring UBH to "employ adequate security protocols." Compl. ¶ 306; Opp'n at 19. But again, such an order does not redress Plaintiffs' alleged injuries.

Because Plaintiffs cannot meet all three elements of standing, this Court lacks jurisdiction, and UBH requests the Court dismiss the Complaint without prejudice.

## II.    DISMISSAL IS WARRANTED UNDER RULE 12(b)(1) BECAUSE THE COURT MUST DECLINE JURISDICTION UNDER CAFA

In the Opposition, Plaintiffs try to turn the Parties' respective burdens to establish minimal diversity under CAFA on its head – faulting UBH for allegedly not establishing *definitively* that at least two-third of the potential class are Utah citizens, while exculpating themselves for failing to properly plead that at least one third are citizens of other states. Plaintiffs' argument fails for three reasons.

First, contrary to the Opposition, CAFA requires, among other things, Plaintiffs establish a "member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2)(A). In other words, Plaintiffs bear the burden of establishing minimal diversity. Here, the Opposition shows Plaintiffs are not aware of a single potential class member who is a citizen of a state other than Utah. *See* Opp'n. at 21. For example, all the named Plaintiffs are citizens of Utah. *See* Compl. ¶¶ 14-19. So, to meet their burden of establishing minimal diversity, Plaintiffs suggest on "information and belief" that some of the unnamed class members must be citizens of other states because UBH sent to attorneys general about the potential impact

13

of the Incident on residents of their states. *See e.g.*, Compl. ¶ 21 n1. But the argument is legally and logically flawed. On one hand, as Plaintiffs argue in the Opposition, residency alone does not establish citizenship. *Nichols v. Chesapeake Operating, LLC*, 718 F. App'x 736, 739-41 (10th Cir. 2018).[12]

On the other hand, the notices actually support a finding that at least two-thirds of the putative class members are citizens of Utah because as conceded in the Opposition, each attorneys general's notice identified the potential number of affected individuals, and collectively, they added up to 1,267 out 103,974 potentially affected persons. *See* Opp'n at 21 ("16 Maine residents were impacted; 1120 Texas residents were impacted; 72 Massachusetts residents were impacted; [and] 59 Indiana residents were impacted).[13] Thus, rather than proving that some of the affected employees are citizens of other states, the Opposition shows that at least two-thirds of them are citizens of Utah and thus the CAFA exception applies.

Second, contrary to the Opposition, UBH has sufficiently established that at least two-thirds of the purported class are Utah citizens. An individual is domiciled in, and therefore a citizen of, a state in which the person resides and intends to remain indefinitely, which is determined by the "totality of the circumstances." *Lax v. APP of N.M. ED, PLLC,* Nos. 22-2057, 22-2058, 2022 U.S. App. LEXIS 19279, at *11 (10th Cir. July 13, 2022). Determining

---

[12]  Plaintiffs do not offer any additional evidence to establish that any of these residents are in fact citizens of their respective states. *See McCollin v. United States Army Corps of Eng'rs*, No. 2:12-cv-1022, 2013 U.S. Dist. LEXIS 175432, at *5 (D. Utah Dec. 11, 2013) (In opposing a factual attack, Plaintiffs, "must . . . present evidence necessary to satisfy [their] burden of establishing that the court possesses subject matter jurisdiction.")

[13]  There is no dispute that UBH, the only defendant, is a citizen of Utah. *See* Mot. at 23; Opp'n at 21.

14

citizenship is "an all-things-considered approach" and any number of factors and "aspects of human life and activity" might shed light on the subject in any given case. *Id.* at *12 (internal quotation marks omitted). One such factor, weighing in favor of citizenship, is continued residency. *See id.* at *15. The Tenth Circuit uses "an evidentiary standard based on practicality and reasonableness," when analyzing CAFA exceptions, rather than require exact certainty. *Id.* at *12-13 (noting the impracticability of obtaining citizenship information on every class member). Although a court may not rely on guesswork, a court's determination may be "based on reasonable inferences drawn from the available data." *Id.* at *17. Reasonable inferences do not constitute impermissible guesswork. *Id.* Contrary to Plaintiffs' arguments, UBH met this standard here by analyzing residency, plus several other factors, as discussed below. *See* Mot. at 24-25.

Third, the cases relied upon by Plaintiffs, *Dutcher* and *Reece*, are distinguishable from the case at hand. In *Dutcher*, the Plaintiffs did not present "any evidence" to support citizenship, relying only upon allegations based on information and belief that the proposed class were former owners of real property within the forum. *Dutcher v. Matheson*, 16 F. Supp. 3d 1327, 1333 (D. Utah 2014). *Reece* is similarly distinguishable where Plaintiffs, at an evidentiary hearing, relied only on the class definition, which included Oklahoma property owners, and summary exhibits that purported to compare the percentage of Oklahoma and non-Oklahoma class members in the area at issue, without introducing the underlying records and data. *See Reece v. AES Corp.*, 638 F. App'x 755, 760 (10th Cir. 2016). That is not the case here.

UBH relies upon residency, plus the additional factors of continued residency,[14] obtaining services at a rural independent healthcare system, the nature of the locale, and business records that establish from 2020 through August 2023 over 95% of UBH patients had Utah addresses. UBH looked at residency of the entire class, not just a sample. These factors all weigh in favor of Utah citizenship. UBH is not asking the court to guess, but rather to make a permitted, reasonable inference from the available data. At least two-thirds, and indeed approximately 88%, of the purported class are Utah citizens, requiring the Court to decline jurisdiction.

In sum, Plaintiffs fail to establish even minimal diversity whereas UBH has shown that at least two-thirds of the putative class members are citizens of Utah.

## III.   IN THE ALTERNATIVE, UNDER CADA, UBH IS ENTITLED TO JUDGMENT ON THE COMPLAINT IN WHOLE

Plaintiffs admit all 25 of UBH's statements of material fact and do not allege single additional statement of material fact by failing to properly respond to them.[15] Plaintiffs do not dispute CADA applies to all claims made by Plaintiffs and do not dispute that UBH's written information security program ("WISP") was properly designed within the meaning of Section 702(4) and compliant with all three subparts. *See* Utah Code Ann. §§ 78B-4-702(4)(a)-(c).

---

[14]  Even if one were to remove the 8,700 individuals that had address changes (to account for a potential finding that they recently moved from another state to Utah) that still leaves 83,250 individuals that had, and continued to have at the time of the notice, Utah addresses. This still accounts for significantly more than two-thirds of the 103,974 purported class members.

[15]  "If a party . . . fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion [for summary judgment]." *Butler v. Daimler Trucks N. Am., LLC*, 74 F.4th 1131, 1151 (10th Cir. 2023); *see also* Fed. R. Civ. P. 56(e)(2).

Plaintiffs argue only that summary judgment is premature, it is unknown if UBH had actual notice of the threat, and "reasonable" compliance is not defined in the statute. None of these reasons warrant denial of summary judgment.

### A.    A Motion For Summary Judgment Is Not Premature.

Plaintiffs' declaration[16] fails to identify a single probable fact that it is likely to discover and why such fact precludes summary judgment.

Rule 56 "does not require discovery before summary judgment is granted." *Adams v. C3 Pipeline Constr. Inc.*, 30 F.4th 943, 968 (10th Cir. 2021). Nevertheless, Rule 56(d) permits a court to, among other things, defer considering a motion or allow time for parties to take discovery, "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts *essential* to justify its opposition." Fed. R. Civ. P. 56(d) (emphasis added).

To seek relief under this rule, the affiant must do more than just describe topics of discovery, but instead must identify "the probable facts not available," and how the additional discovery will rebut the motion. *Adams*, 30 F.4th at 968. The declaration must be "robust" and a court "may not look beyond the affidavit in considering a Rule 56(d) request," even if the summary judgment response "arguably contains the information required in Rule 56(d)." *Id.*

Here, Plaintiffs declaration does not satisfy the Rule 56(d) standard. The declaration merely states the individuals Plaintiffs intend to depose and categories of discovery they intend

---

[16]  UBH presumes that Plaintiffs' Rule 56(f) declaration was intended to be a Rule 56(d) declaration. *Compare* Fed. R. Civ. P. 56(f) (discussing judgments independent of the motion) *with* Fed. R. Civ. P. 56(d) (identifying options a court may take "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition").

to seek. Bleichner Decl. ¶¶ 6-7. Plaintiffs do not identify the probable facts currently not available, nor describe how those facts would allow Plaintiffs to rebut the motion. Without more, there are no grounds to deny or defer ruling on the motion as presented.

**B.    Subsection 702(5) Does Not Preclude Judgment In UBH's Favor.**

Plaintiffs' reliance on subsection 702(5) of CADA is unavailing because the filings show that UBH did not have actual notice of a threat to the security, confidentiality, or integrity of personal information and because Plaintiffs only raise an issue with one of three required elements.

Under Subsection 5, a defendant is not entitled to CADA's affirmative defense if the defendant "had actual notice of a threat or hazard to the security, confidentiality, or integrity of personal information," did not act in a reasonable amount of time, *and* the threat resulted in the breach. Utah Code Ann. § 78B-4-702(5)(a). All three elements are required to preclude the affirmative defense. *See Id.*

Here, Plaintiffs only claim UBH fails to allege it did not have actual notice of the threat prior to the Incident. Opp'n at 27. As an initial matter, Plaintiffs' argument fails because they only raise an issue as to one of the three required elements and all three must be shown to disclaim the use of the affirmative defense. *See* Utah Code Ann. § 78B-4-702(5)(a); Opp'n at 27.

Moreover, it is not genuinely disputed that UBH did not have actual notice of a threat or hazard. The Incident occurred on November 7, 2022, the same day that "UBH became aware of unusual activity on [its] network." *See* Marx Decl. ¶¶ 16, 38, Ex. 1. The proffered and undisputed evidence establishes UBH did not have prior notice of the threat. And Plaintiffs cannot "avoid summary judgment by relying on unsupported allegations in [the] complaint."

*Cummings v. United States Postal Serv.*, No. 20-7066, 2021 U.S. App. LEXIS 29996, at *14

(10th Cir. Oct. 6, 2021); *see also* Fed. R Civ. P. 56(c)(1); Opp'n at 27. Accordingly, Plaintiffs'

Subsection 5 argument does not preclude summary judgment for UBH.

### C.      UBH Reasonably Complied f WISP.

CADA gives an entity an affirmative defense when it "creates, maintains, and reasonably

complies with a written cybersecurity program that meets the requirements of Subsection (4)"

and is in place at the time of the breach. Utah Code Ann. §§ 78B-4-702(1)-(3). UBH established,

and Plaintiffs do not dispute, that UBH's WISP met the requirements of Subsection 4 and was in

place at the time of the breach.[17] Plaintiffs only argue that "reasonable compliance" is not

defined by the statute and therefore whether UBH reasonably complied with its WISP is an issue

of fact. *See* Opp'n 27-28; Utah Code Ann. §§ 78B-4-702(1)-(3).

It is not necessary for the Court to define "reasonable compliance" under the statute

because UBH established it complied with the WISP. UBH provided detailed analysis through

expert testimony and copies of Intraprise's certifications that UBH's WISP complied with

HIPAA in 2021 and 2022. *See* October 2023 Declaration of Dr. Bruce Hartley ¶ 21, [Dkt. 33];

Marx Decl. ¶ 25, Exhibit 14.

---

[17]  Plaintiffs do not and cannot argue that UBH's WISP does not reasonably conform to a recognized cybersecurity framework under Subsection 4(b). *See* Opp'n at 27. UBH established that its WISP does conform to at least three of the alternative frameworks. *See* Mot. at 29-32. And Plaintiffs, who have in their possession the very WISPs UBH relies upon, do not raise a single disputed fact or assert a single argument as to how the WISP does not comply with a recognized cybersecurity framework. Plaintiffs do not raise any additional facts in their Rule 56(f) declaration that would be needed to make this argument, nor could they, as they have all requisite information.

Plaintiffs offer nothing to the contrary. Plaintiffs' do not allege any facts to suggest that UBH was not in compliance, reasonably or otherwise, with their WISP. Nor does Plaintiffs' 56(d) declaration identify probable, necessary facts that would permit them to counter this argument. Where there is no argument or evidence to the contrary—there is no reason to send "reasonably compliance" to a fact finder. *See Faustin v. City & Cty. of Denver*, 423 F.3d 1192, 1198 (10th Cir. 2005) ("Only material factual disputes can create a genuine issue for trial and preclude summary judgment"); *cf. N.Y. Life Ins. Co. v. K N Energy*, 80 F.3d 405, 409 (10th Cir. 1996) ("Although generally, the question of whether a contract exists is a matter of fact to be determined by the jury, this is only the case where the evidence is conflicting or admits of more than one inference.") UBH is entitled to summary judgment pursuant to CADA.

In sum, Plaintiffs fail to submit evidence showing a disputed issue of fact precluding summary judgment on UBH's affirmative defense under CADA.

## IV.    IN THE ALTERNATIVE, THE COMPLAINT FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

Nothing in the Opposition saves Plaintiffs' Second, Fourth, Fifth, and Seventh causes of from dismissal for failure to state a claim under Rule 12(b)(6).

**First**, Plaintiffs admit that "*negligence per se*" is not "a standalone claim but a theory of proof," and that an alleged violation of HIPAA cannot serve as the predicate basis of such theory. *See* Mot. at 34-35; Opp'n at 30-32. Similarly, several courts have rejected Plaintiffs' attempt to privately enforce the FTCA through state law. *See Rider v. Uphold HQ Inc.,* No. 22-cv-1602, 2023 U.S. Dist. LEXIS 29617, at *18-19 (S.D.N.Y. Feb. 22, 2023) (dismissing a negligence per se claim based on the FTCA where to "allow such a claim would effectively afford a private right of action that the statute does not recognize – contravening the legislative

scheme"); *see also Pica v. Delta Air Lines, Inc*., 2018 U.S. Dist. LEXIS 220836, *25 (C.D. Cal.

Sep. 18, 2018) (California negligence per se claim was "barred because the FTC Act creates no

private right of action"). And Utah courts have also found statutes under which there is no

private cause of action cannot support recovery under a "negligence per se" theory.[18] *See e.g.,*

*Miller v. Gastronomy, Inc*., 2005 UT App 80, ¶ 18, 110 P.3d 144, 148-49 (violation of the

Alcoholic Beverage Control Act did not form the basis of a negligence per se theory because "in

Utah, criminal culpability generally constitutes only evidence of negligence in a civil action,

rather than negligence per se as a matter of law"). In short, nothing in the Opposition saves the

"negligence per se" claim from dismissal as a matter of law.

**Second**, Plaintiffs' "*unjust enrichment*" claim fails because Plaintiffs cannot allege that

UBH retained any improper benefit. Plaintiffs contend UBH retained an unjust benefit by

retaining Plaintiffs' "valuable Private Information" without funding appropriate data security

practices. Opp'n at 32. But courts have rejected this argument, reasoning in analogous cases that

the plaintiffs' PII has no value to the defendant.[19] *See Teeter*, 2023 U.S. Dist. LEXIS 35347, at

*17 (dismissing plaintiffs unjust enrichment claim and noting defendant "received no material

benefit from [plaintiff's] PHI/PII"). Moreover, the cases Plaintiffs cite are distinguishable

because they "involved circumstances where the defendants collected information that was itself

---

[18]  In Utah, negligence per se is "conduct . . . which may be declared and treated as negligence without any argument or proof as to the particular surrounding circumstances." *Child v. Gonda*, 972 P.2d 425, 432 (Utah Sup. Ct. 1998) (internal quotation marks omitted).

[19] In a world where, as one District Judge put it, "[t]here are only two types of companies . . . those that have been hacked and those that don't know they've been hacked," *Storm v Paytime, Inc.*, 90 F. Supp 3d 359, 360 (M.D. Pa. 2015) (internal quotation marks omitted), such a holding would result in a mass influx of claims that would survive without even minimal evidence as to an unjust benefit.

monetized and used for commercial purposes." *In re Am. Med. Collection Agency Customer Data Sec. Breach Litig.*, Civil Action No. 19-md-2904, 2021 U.S. Dist. LEXIS 240360, at *47 (D.N.J. Dec. 16, 2021); *see also*, *In re Marriott Int'l, Inc.*, 440 F. Supp. at 461 (involving allegations that Marriott collected, and paid a customer analytics company to analyze, PII "to better target customers and increase its profits"). Here, unlike *Marriott*, Plaintiffs have not and cannot allege that UBH monetized the PII that was potentially exposed in the Incident. Thus, the unjust enrichment claim fails as a matter of law.

**Third**, Plaintiffs do not deny that Utah does not recognize a cause of action for "*breach of confidence*." Nor do Plaintiffs dispute that where recognized, a "breach of confidence" claim fails if predicated on the allegation that the defendant's "inadequate security facilitated the theft of information by third-parties." *Farmer v. Humana, Inc.*, 582 F. Supp. 3d 1176, 1189 (M.D. Fla. 2022) (noting that there must be an affirmative act by the defendant). Instead, Plaintiffs suggest that this cause of action may be named a breach of fiduciary duty. Opp'n at 34. But Plaintiffs already have a cause of action based on breach of fiduciary duty pertaining to UBH's alleged failure to safekeep Plaintiffs' information. *See* Compl. ¶¶ 283-291 (Sixth Cause of Action). And thus, even accepting Plaintiffs' arguments, the Fifth Cause of Action for "breach of confidence" fails as a matter of law, or at least as duplicative of the Sixth Cause of Action.

**Fourth**, Plaintiffs alleged "*invasion of privacy*" claim fails because it is anchored on UBH's purported intrusion upon their seclusion, which requires a showing of (1) "an intentional substantial intrusion, physically or otherwise, upon the solitude or seclusion of the complaining party," and (2) the intrusion "would be highly offensive to the reasonable person." *Stien v. Marriott Ownership Resorts*, 944 P.2d 374, 378 (Utah Ct. App. 1997) (internal quotation marks

omitted).[20] Plaintiffs cannot satisfy the first element. Examples of an intentional intrusion include a "physical intrusion" into a secluded place, use of the defendant's senses to "oversee or overhear plaintiff's private affairs," or an investigation or examination "into [plaintiff's private concerns." *Barker v. Manti Tel. Co.*, No. 2:06-cv-00812, 2009 U.S. Dist. LEXIS 819, at *8-9 (D. Utah Jan. 6, 2009) (internal quotation marks omitted). It is "[t]he intrusion itself" that gives rise to liability. *Id.* at *9. But sustaining a ransomware attack is not an "intentional intrusion." The Complaint is devoid of any suggestion that UBH improperly obtained Plaintiffs' information. Also absent from the Complaint is any allegation that UBH intentionally leaked Plaintiffs' information. The sole allegation is that UBH allegedly failed to "properly secure and safeguard" their PII and PHI. *See* Compl. ¶¶ 1, 295-96. This does not satisfy an intrusion upon seclusion claim. *See Feins v. Goldwater Bank NA*, No. cv-22-00932, 2022 U.S. Dist. LEXIS 222406, at *13-14 (D. Ariz. Dec. 9, 2022) (noting the third-party hacker plausibly engaged in intrusion upon seclusion, but not the entity hacked where there is no allegation that defendant intentionally leaks plaintiffs' information).[21]

In sum, Plaintiffs' Second, Fourth, Fifth, and Seventh causes of action fail to state a claim upon which relief could be granted under Utah law.

---

[20]  Plaintiffs do not dispute that the Complaint fails to state a claim for UBH's alleged "public disclosure of private facts." *See* Opp'n at 35. To the extent the Complaint is based upon public disclosure of private facts, such claim should be dismissed.

[21]  As a threshold matter, Plaintiffs request permission to file a Second Consolidated Amended Complaint, in the event the Court dismisses any claim pursuant to Rule 12(b)(6). Opp'n 30 at n. 8. However, a request for a court order must be made by motion. Fed. R. Civ. P. 7(b). And, under the Local Rules, a party may not make a motion or cross motion in a response. DUCivR 7-1(a)(3). If Plaintiffs seek to amend, they must do so in a separate motion.

## <u>CONCLUSION</u>

Despite having in place precautionary measures and protocols for data security, UBH was the victim of a cybersecurity attack—an unfortunate reality for nearly all companies today. But that does not automatically give rise to jurisdiction, or liability. This Court does not have jurisdiction. And UBH complied with its proper data security protocols. For these reasons and because many of Plaintiffs' causes of action simply fail to state a claim, UBH respectfully requests this Court dismiss the Complaint.

DATED this 16th day of January, 2024.

HOLLAND & HART LLP

*/s/ Emily T. Howe*
Blaine J. Benard
Brent E. Johnson
Engels J. Tejeda
Emily T. Howe
*Attorneys for Defendant*

31170285_v3

24